**Nos. 20-17363(L),**
**20-17364, 21-15193, 21-15194 (CON)**

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

───────────────────────

DAVID WIT, et al.,
*Plaintiffs-Appellees*,

LINDA TILLITT, et al.,
*Intervenor-Plaintiffs-Appellees*,

– v. –

UNITED BEHAVIORAL HEALTH,
*Defendant-Appellant.*

GARY ALEXANDER, et al.,
*Plaintiffs-Appellees*,

MICHAEL DRISCOLL,
*Intervenor-Plaintiff-Appellee*,

– v. –

UNITED BEHAVIORAL HEALTH,
*Defendant-Appellant.*

───────────────────────

On appeal from the United States District Court
for the Northern District of California
Case Nos. 3:14-cv-2346, 3:14-cv-5337 – Hon. Joseph C. Spero

───────────────────────

**BRIEF OF AMERICA'S HEALTH INSURANCE PLANS**
**AS *AMICUS CURIAE* SUPPORTING REVERSAL**

───────────────────────

JOSHUA B. SIMON
WARREN HASKEL
RICHARD DIGGS
  *McDermott Will & Emery LLP*
  *340 Madison Avenue*
  *New York, NY 10173*
  *(202) 547-5400*

MICHAEL B. KIMBERLY
SARAH P. HOGARTH
  *McDermott Will & Emery LLP*
  *500 North Capitol Street NW*
  *Washington, DC 20001*
  *(202) 756-8000*

*Counsel for Amicus Curiae America's Health Insurance Plans, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 29(a)(4)(A) and 26.1, *amicus curiae* America's Health Insurance Plans, Inc. (AHIP) states that it has no parent corporation and that no publicly traded company holds 10% or more of AHIP's stock. AHIP is a trade association whose members have no ownership interests.

## TABLE OF CONTENTS

Corporate Disclosure Statement ..................................................... i

Table of Authorities ...................................................................... iii

Introduction and Interest of *Amicus Curiae*  ............................... 1

Argument ........................................................................................ 5

I.    Purely process-based claims are not cognizable under
ERISA ..................................................................................... 6

    A.    The district court's process-as-harm rationale
contradicts well-settled Article III and Rule 23
jurisprudence ...................................................................... 7

    B.    The district court's process-as-injury rationale
would do enormous and lasting damage to ERISA-
protected benefits if affirmed by this Court ................... 11

II.    Courts may not assume for themselves the exercise of an
ERISA plan administrator's discretion ............................... 16

Conclusion ................................................................................... 23

## TABLE OF AUTHORITIES

### Cases

*Abatie v. Alta Health & Life Ins. Co.*,
  458 F.3d 955 (9th Cir. 2006) ........................................17

*Aetna Health Inc. v. Davila*,
  542 U.S. 200 (2004)....................................................5, 6

*Alessi v. Raybestos-Manhattan, Inc.*,
  451 U.S. 504 (1981)..........................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................14

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)........................................................13

*Atzin v. Anthem, Inc.*,
  2020 WL 2198031 (C.D. Cal. May 6, 2020)....................12

*Becker v. Chrysler LLC Health Care Benefits Plan*,
  691 F.3d 879 (7th Cir. 2012) ........................................20

*Black & Decker Disability Plan v. Nord*,
  538 U.S. 822 (2003)..................................................21, 22

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)............................................................9

*Conkright v. Frommert*,
  559 U.S. 506 (2010)..................................................15, 18

*D.T. by & through K.T. v. NECA/IBEW Fam. Med. Care Plan*,
  2019 WL 1354091 (W.D. Wash. Mar. 26, 2019) ............12

*Des Roches v. California Physicians' Serv.*,
  320 F.R.D. 486 (N.D. Cal. 2017)....................................12

*Egelhoff v. Egelhoff ex rel. Breiner*,
  532 U.S. 141 (2001)..........................................................5

*Fort Halifax Packing Co. v. Coyne*,
  482 U.S. 1 (1987)..............................................................5

*Gobeille v. Liberty Mut. Ins. Co.*,
  136 S. Ct. 936 (2016)..................................................5, 22

*Health Ins. Plans v. Hudgens*,
  742 F.3d 1319 (11th Cir. 2014)......................................16

*Hendricks v. Aetna Life Ins. Co.*,
  2019 WL 9054861 (C.D. Cal. Dec. 26, 2019)..................13

## Cases—continued

*Kazda v. Aetna Life Ins. Co.*,
  2019 WL 6716306 (N.D. Cal. Dec. 10, 2019) .................................13

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985).........................................................................5

*Metro. Life Ins. Co. v. Glenn*,
  554 U.S. 105 (2008).......................................................................16

*Pilot Life Ins. Co. v. Dedeaux*,
  481 U.S. 41 (1987).....................................................................6, 17

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term
  Disability Income Plan*,
  85 F.3d 455 (9th Cir. 1996) ..........................................................18

*Shaw v. Delta Air Lines, Inc.*,
  463 U.S. 85 (1983)...........................................................................5

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016).....................................................................8

*PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.
  Morgan Stanley Inv. Mgmt.*,
  712 F.3d 705 (2d Cir. 2013) ..........................................................13

*Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.*,
  852 F.3d 105 (1st Cir. 2017) .........................................................20

*Summers v. Earth Island Institute*,
  555 U.S. 488 (2009).........................................................................8

*Thole v. U. S. Bank N.A*,
  140 S. Ct. 1615 (2020).....................................................................8

*Vaught v. Scottsdale Healthcare Corp. Health Plan*,
  546 F.3d 620 (9th Cir. 2008) .........................................................14

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996).......................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).......................................................................10

*Weil v. Cigna Health & Life Ins. Co.*,
  2017 WL 10345373 (C.D. Cal. Apr. 19, 2017)...............................14

*William O. Gilley Enterprises, Inc. v. Atl. Richfield Co.*,
  588 F.3d 659 (9th Cir. 2009) .........................................................13

**Statutes and other authorities**

Employee Retirement Income Security Act of 1974
(ERISA), 29 U.S.C. § 1001 *et seq.*............................................*passim*

29 U.S.C. § 1132 .................................................................5

29 U.S.C. § 1132(a)(1)(B).................................................9, 15

29 U.S.C. § 1132(a)(3)........................................................9

29 U.S.C. § 1144(a) ...........................................................15

Katherine Keisler-Starkey & Lisa N. Bunch,
*Health Insurance Coverage in the United States: 2019*,
U.S. Census Bureau (Sept. 2020)........................................2

### INTRODUCTION AND INTEREST OF *AMICUS CURIAE* [1]

About half of all Americans today—an estimated 183 million—depend on the health coverage they receive through an employer under plans governed by the Employee Retirement Security Act of 1974 (ERISA). The decision below runs directly counter to ERISA's objective of encouraging employers to establish benefits plans to improve the health and financial stability of employees and their families. If allowed to stand, the district court's decision will severely limit the ability of employers and their plan administrators to design benefit plans that provide affordable, accessible, and high-quality health coverage, especially in the growing area of mental-health and substance-abuse treatment specifically at issue in this case.

America's Health Insurance Plans, Inc. (AHIP) is the national trade association for health insurance providers. AHIP advocates for public policies that expand access to affordable health care coverage to all Americans through a competitive marketplace that fosters choice, quality, and innovation. With its predecessor organization, AHIP has more than 60 years of experience in the industry. AHIP's members provide health and supplemental benefits through employer-provided coverage as well as the individual mar-

---

[1]  All parties have consented to the filing of this brief. Pursuant to Rule 29(a)(4), *amicus* states that no party's counsel have authored this brief in part or in whole, and no person (other than *amicus*, its members, and its counsel) have contributed money to fund the preparation or submission of this brief.

1

ket and public programs like Medicare and Medicaid. As a result, AHIP's members have broad experience working with virtually all health care stakeholders to ensure that patients have access to needed treatments and medical services. That experience gives AHIP extensive first-hand and historical knowledge about the nation's health care and health insurance systems and a unique understanding of how those systems work.

AHIP's members provide coverage to millions of individuals who are participants in or beneficiaries of employee benefit plans under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* As health insurance and administrative service providers to ERISA plans, AHIP's members have a direct and substantial interest in ensuring that ERISA is applied properly and reflects the carefully balanced policy judgments Congress made in designing it.

The ERISA framework encourages employers to provide benefits to employees and their families efficiently, effectively, and uniformly across state lines, with statutory protections for internal and external appeals and for redress to the courts for denials of benefits. This balance has created a robust employer-based system in the United States with over 55 percent of Americans receiving employment-based health care coverage. *See* Katherine Keisler-Starkey & Lisa N. Bunch, *Health Insurance Coverage in the United States: 2019*, U.S. Census Bureau 4-5 (Sept. 2020), perma.cc/6JDW-BYDP.

This brief focuses on two of the district court's holdings that create new law, directly impact plan administrators, and threaten to undermine ERISA plans' operation and the congressional design for ERISA plan administration.

*First*, the district court found standing and certified classes based on a purely process-based theory of injury, rather than the injury that ERISA is concerned with: wrongful denials of benefits. By fashioning plaintiffs' injury purely in terms of process rather than outcome, the district court dramatically lowered the Article III and Rule 23 bars in ERISA cases. Under the lower court's reasoning, *any* participant denied a benefit can pursue a claim premised on a perceived defect in how a particular claim is handled, regardless of whether the alleged defect affected the outcome. And she can do so through the vehicle of a class action on behalf of every other participant denied the same benefit—again, without regard for whether the asserted error had any impact on the outcome of benefits decisions.

ERISA plans and their administrators should not face costly lawsuits predicated on purely process-based claims untethered to actual, concrete injuries. ERISA promises—and AHIP supports—appropriate statutory remedies for beneficiaries who demonstrate that they sought and were entitled to a benefit under their plan but did not receive it. But a process-as-injury doctrine does not ensure that participants who are actually entitled to benefits receive them. Instead, it would open the door to substantial new burdens and expenses on plans to correct perceived process defects, even if those defects do

3

not change coverage determinations. That, in turn, would only raise costs and risk limiting the benefits available to individuals and families that depend on those plans for coverage.

*Second*, the district court not only ordered the reprocessing of 67,000 claims denied over a six-year period, but it also imposed court supervision of the processing of claims for 10 years into the future. Across that 16-year span of time, the court purported to dictate the substantive standards that must be applied to claims determinations, according to court-selected medical publications. The district court's action effectively deprives the plan administrator of the discretion entrusted to it by the relevant plan documents (and its employer-clients) to determine the new standards that should apply.

At bottom, Congress was sharply focused on leaving employers free to design, structure, and administer their plans within the guardrails set by federal law and subject to a beneficiary's exclusive federal remedy in federal court should those guardrails fail. Nothing in ERISA suggests that Congress wanted ERISA beneficiaries to be able to sue without an actual injury or that it intended for courts to put themselves in the business of managing an ERISA plan. If the Court does not reverse, the lower court's holdings will have a lasting and detrimental impact on ERISA-covered benefits plans and their administrators and, as a result, on employees' access to robust and affordable employment-based health care coverage.

## ARGUMENT

ERISA is "a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). In this regard, ERISA "make[s] the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures." *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016).

To encourage employers to continue offering employer-sponsored benefit plans, ERISA made regulation of these plans "exclusively a federal concern." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981). Federalized regulation "enable[d] employers 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.'" *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148 (2001) (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)). And for beneficiaries to remedy wrongly denied benefits, ERISA incorporated "an integrated system of procedures for enforcement," including exclusive federal causes of action under 29 U.S.C. § 1132. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)).

In Congress's view, federalizing regulation and limiting litigation would "'minimiz[e] the administrative and financial burden[s]' on plan administrators—burdens ultimately borne by the beneficiaries." *Egelhoff*, 532 U.S. at

149-150. ERISA's reticulated scheme of regulation and remedies thus reflects "a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Aetna*, 542 U.S. at 208 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 581 U.S. 41, 54 (1987)).

Two of the district court's holdings upend this design and, if affirmed by this Court, would threaten serious damage to ERISA plans and their beneficiaries. First, the district court relaxed Article III and Rule 23 standards, allowing plaintiffs to bring class actions on purely process-based claims without so much as an allegation that benefits were wrongly denied. Second, it assumed for itself the role of ERISA plan administrator, dictating standards that are the actual plan administrator's to determine. Both errors warrant reversal.

## I.  PURELY PROCESS-BASED CLAIMS ARE NOT COGNIZABLE UNDER ERISA

Hornbook law provides that a plaintiff cannot establish Article III standing based solely on the deprivation of a procedural right without some concrete interest affected by the deprivation. The district court, however, forged a new path. It reasoned that "an ERISA Plan participant or beneficiary may bring a claim for arbitrary and capricious denial of benefits based on an injury other than [an] actual denial [of benefits] if the process by which a coverage determination was made was defective." 1A-ER-79. From this per-

spective, "the relevant injury" is "the defective *process* that was applied to the determination of the plaintiff's coverage" itself, and not a wrongful denial of benefits. *Id*. The practical consequences of that holding are far-reaching and significant.

To be clear, this case does not concern the traditional methods guaranteed by ERISA for beneficiaries to seek appropriate redress if they believe their plans have wrongly denied claims for benefits. Plan participants who believe they are entitled to a benefit but have been denied that benefit may avail themselves of their plan's administrative appeals process. And if the appeal process does not result in a reversal of the claim denial, they may file a lawsuit alleging a wrongful denial. But neither ERISA nor the federal rules permit a lawsuit predicated, not on actual *denials* of claims, but instead on mere complaints about the *processing* of claims.

A holding from this Court authorizing process-as-injury suits would offend well-settled principles of Article III standing and provide an end-run around the limits of Rule 23 in ERISA cases. This Court should reverse.

## A.   The district court's process-as-harm rationale contradicts well-settled Article III and Rule 23 jurisprudence

**1.**   Prior to the decision in this case, it was uniformly understood that a plaintiff cannot establish Article III standing based solely on a process-based injury. The Supreme Court has said so clearly and repeatedly: "[D]eprivation of a procedural right without some concrete interest that is affected by the

deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009). The reason a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation" is clear: A violation of bare procedural requirements "result[s] in no harm" as a practical matter if the outcome is the same either way. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016).

These strictures apply in the ERISA context just like any other. That is to say, "[t]here is no ERISA exception to Article III." *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1622 (2020). Where "[w]inning or losing [the] suit would not change the plaintiffs' . . . benefits," they "have no concrete stake in th[e] dispute and therefore lack Article III standing." *Id.*

The district court's conclusion that the purely process-based harm at issue here constituted a standalone "injury" sufficient for Article III purposes is irreconcilable with these cases. By its own admission (1A-ER-79), the district court's approach would authorize any plaintiff who was denied benefits for any reason to bring a lawsuit based merely on an allegation that a plan administrator applied a defective standard for its benefits determinations, regardless of "whether [the plaintiffs] were actually entitled to benefits" under the proper standards. 1A-ER-66. On this ground, the district court granted an injunction without requiring proof of causation or redressability: Plaintiffs need not demonstrate that the challenged standards caused an actual injury

(were the basis for a benefits denial) nor that the specific relief sought (reprocessing under different standards) would remedy any such actual injury.

Under this reasoning, a plaintiff may sue solely on the basis of an interest in ERISA compliance. But that is not the law. A beneficiary with a properly denied claim has no "personal stake in the outcome" of a challenge based solely on alleged process defects and thus lacks standing. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). This follows not only from the settled limits on federal judicial power, but also from the text of ERISA itself, which authorizes claims for "benefits due," not processes due, "under the terms of [their] plan[s]." 29 U.S.C. § 1132(a)(1)(B).

To be sure, Section 1132(a)(3) permits courts to enter appropriate equitable relief, as well. But the question presented in this appeal is not whether reprocessing is a form of relief that courts technically have the power to order. The question, instead, is whether plaintiffs may obtain a "reprocessing" remedy to avoid the brass-tacks work of proving injury and causation. The answer is *no*—a court may not find plans or their administrators liable prematurely under ERISA, leaving it to the plan or administrator itself, during later "reprocessing," to sort out who, if anyone, actually has a claim.

**2.** Along with short-circuiting Article III, the district court's holding allows an end-run around the limits of class actions under Rule 23. Permitting class certification based on the use of a process, rather than on a concrete in-

jury caused by that process, effectively relieves plaintiffs of their obligation to show the commonality or superiority of a class action.

By definition, a plaintiff class alleging a bare procedural injury suffered by all beneficiaries will satisfy the Rule 23(a) "commonality" inquiry—which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). And, almost by definition, a plaintiff class will satisfy the "numerosity" requirement by needing only enough beneficiaries who also had a claim denied for the same benefit, regardless of the reason. Thus, under the district court's process-alone-is-injury theory, class certifications will be granted nearly as a matter of course.

This case proves the point. Plaintiffs have combined into a class every beneficiary who had a claim for particular benefits denied over a 6-year period without regard for the reason or substantive validity of the denial. By resting on a bare procedural injury, any denial of benefits to an ERISA beneficiary can be spun into a class action with a remedy of requiring a plan to reprocess every single claim denied for a particular benefit—without attention to the substantive validity of any particular denial or the inevitable outcomes for properly denied claims. This is antithetical to the strictures governing class certification under Rule 23.

### B. The district court's process-as-injury rationale would do enormous and lasting damage to ERISA-protected benefits if affirmed by this Court

**1.** The district court's holding, if affirmed by this Court, risks significantly expanding ERISA liability in class actions. By relieving ERISA plaintiffs of the need to show causation or redressability, and by inviting all "process-based" claims to proceed as class actions, the district court's holding would invite a flood of baseless new lawsuits against ERISA plans and administrators—lawsuits that would significantly increase the time and expense of administering those plans. And these dramatically increased costs will ultimately be borne by the employers that offer these plans and the individuals and families that depend on their employer-sponsored benefits.

This case illustrates the problem. Plaintiffs sought class-wide reprocessing of 67,000 claims denied over a period of 6 years, disclaiming any obligation to show that a single one of those 67,000 claims was wrongly denied in the first place. 1A-ER-64-65, -79. After the district court accepted that untenable theory, other courts in this circuit have relied on the decision below as authority for it. For example, Judge Seeborg recently granted class certification in another suit against United because "plaintiff's only 'but-for' burden is to show that but for the application of the 2017 Guidelines, coverage requests would have been processed in an ERISA-compliant manner." Order Granting Motion for Class Certification at 8, *Jones v. United Behavioral Health*, No. 19-cv-6999 (N.D. Cal. Mar. 11, 2021), Dkt. 76 (citing the decision below).

Relying on the reasoning below, a different judge of the Northern District of California recently granted class certification in an ERISA case on the ground that "[p]laintiffs can show that [d]efendants caused harm on a general basis if . . . [d]efendants applied an incorrect standard in evaluating their claims." *Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486, 499 (N.D. Cal. 2017) (citing the decision below). In other words, when "the claimed harm is 'one of process, not outcome,'" the questions of "harm and causation can be resolved" without attention to whether any one individual was actually denied benefits wrongfully. *Id*. The Western District of Washington likewise recently granted class certification in an ERISA case because "plaintiffs need not demonstrate that 'they were actually denied benefits' to establish injury." *D.T. by & through K.T. v. NECA/IBEW Fam. Med. Care Plan*, 2019 WL 1354091, at *3 (W.D. Wash. Mar. 26, 2019).

Thus, in the wake of the decision below, additional decisions have further eroded the injury and causation requirements where ERISA violations are alleged. Following the lower court's lead in this case, other courts are excusing plaintiffs from having to prove injury and causation, shifting that burden instead to the plan and its administrator at the "reprocessing" stage. The proper functioning of ERISA depends on an immediate course correction.[2]

---

[2]   *See also, e.g., Atzin v. Anthem, Inc.*, 2020 WL 2198031, at *5 (C.D. Cal. May 6, 2020) (granting class certification; "[t]his common policy can be resolved with respect to the class as a whole through the injunctive relief Plain-

**2.** These lawsuits will undermine rather than promote ERISA's purposes. Class-action litigation is onerous, expensive, invasive, and complex. Plaintiffs alleging merely process-based harms having no actual impact on whether a claim was approved or denied will thus utilize the threat of near-certain class certification and "reprocessing" remedies to extract massive settlements from ERISA plans. *Cf. William O. Gilley Enterprises, Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (plaintiffs must allege "something beyond the mere possibility of loss causation," or else "a plaintiff with a largely groundless claim" would be able to extract oversized settlements from innocent defendants fearful of massive class-wide liability).

The Supreme Court has recognized this risk: "Faced with even a small chance of a devastating loss, [class-action] defendants will be pressured into settling questionable claims." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011). ERISA plans and their administrators will find themselves subject to company-wide investigations of procedures. The prospect of debilitating discovery and crippling liability in ERISA cases, even ones of doubtful merit, will dramatically raise the risk of "settlement extortion." *PBGC ex rel.*

tiffs seek, namely to reevaluate and reprocess claims without using the allegedly erroneous criteria" (citing decision below)); *Kazda v. Aetna Life Ins. Co.*, 2019 WL 6716306, at *7 (N.D. Cal. Dec. 10, 2019) (denying motion to dismiss request for injunctive relief "requiring Aetna . . . [to] reevaluate and reprocess prior denials" (relying on decision below)); *Hendricks v. Aetna Life Ins. Co.*, 2019 WL 9054861, at *5 (C.D. Cal. Dec. 26, 2019) (denying motion to dismiss request for injunctive relief "requiring Aetna 'to reevaluate and reprocess prior denials'" (citing *Kazda*, which relied on decision below)).

*St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 719 (2d Cir. 2013). This is precisely the kind of "in terrorem" leverage that the Supreme Court's cases have repeatedly cautioned against. *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Monetary settlements in process-only cases like this one are also likely to result in windfalls, diverting plan resources from duly-owed and covered benefits to payouts to participants who were never entitled to benefits under their plan documents and thus have not demonstrated harm. Class members whose claims should not have been granted under any procedure would receive monetary relief to which they were never entitled. *Cf. Weil v. Cigna Health & Life Ins. Co.*, 2017 WL 10345373, at *1 (C.D. Cal. Apr. 19, 2017) (preliminarily approving settlement class that would award a minimum of $1,000 to any person who had a claim denied for a particular treatment).

Court-ordered injunctive relief also will impose substantial and unnecessary administrative burdens on ERISA plans. Process-based remedies are blunt tools that apply facially, regardless of outcomes. Such wide-scale reprocessing imposes a substantial burden on the plan administrator to reconsider countless claims, including most that were rightly decided.

Reprocessing claims will, in turn, beget further internal appeals to the plan that must be exhausted. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008). Plans will then likely have to contend with spin-off litigation resulting from the reprocessing. The district court

14

acknowledged as much, explaining that "reprocessing . . . class members' claims will also allow them to correct the 'record' so that they can, if appropriate, pursue other remedies." 1A-ER-136. But this demonstrates why bare procedural injuries, shorn from causation of any harm to plaintiffs' concrete interest, are not the stuff of Article III: No concrete harm is prevented or remedied when the injury and remedy are purely procedural. All that will result is serial do-overs at the substantial expense of a plan administrator following the substantial expense of litigation.

These administrative burdens risk significantly increasing the cost of providing ERISA benefits, a voluntary benefit that ERISA was designed to encourage employers to offer by promising preemption of state laws and liability to enrollees limited to the value of the benefits. *See* 29 U.S.C. §§ 1132(a)(1)(B), 1144(a). Adding yet additional costs may force employers to alter their plan benefit design to limit the benefits they choose to offer or to increase cost-sharing. This, in turn, could result in fewer benefits and higher costs for the employees and their families that rely on this coverage.

Yet these risks are entirely avoidable because there is no basis in the law for relaxing Article III's or Rule 23's strictures for ERISA plaintiffs. Doing so would undercut Congress's concern with ERISA to ensure that "litigation expenses" do not "unduly discourage employers from offering [ERISA] plans in the first place." *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)). Allowing an indi-

vidual to jumpstart years of litigation based on a perceived defect in process is not what Congress envisioned, and it threatens to undermine ERISA's very purpose.

## II. COURTS MAY NOT ASSUME FOR THEMSELVES THE EXER-CISE OF AN ERISA PLAN ADMINISTRATOR'S DISCRETION

Errors of the magnitude just described are usually few and far between. Remarkably, however, the district court below went yet further astray by interfering dramatically with a plan administrator's discretion moving forward. This error also threatens to undermine ERISA's proper functioning and calls out for correction by this Court.

It is an essential feature of ERISA that plan sponsors may confer discretion on third party administrators to make benefits determinations on the plan's behalf. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008); *Am.'s Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1324 (11th Cir. 2014). That discretion is for the administrator to exercise, not a court. "Ensuring that reviewing courts respect the discretionary authority conferred on ERISA fiduciaries encourages employers to provide medical and retirement benefits to their employees through ERISA-governed plans—something they are not required to do." *Metro. Life*, 554 U.S. at 120 (Roberts, C.J., concurring in part and concurring in the judgment).

When a lawsuit is brought asserting an abuse of the discretion conferred by a plan upon an administrator, the court's role is only to determine

whether the administrator's discretion was reasonably exercised. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 969-971 (9th Cir. 2006) (en banc). When the court determines that a discretionary decision was not reasonable, the court may order compensatory relief (*e.g.*, accrued benefits due) and enjoin the administrator from similarly unreasonable exercises of discretion moving forward. *E.g.*, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987).

Here, however, the district court went beyond those accepted limits. It not only determined that the plan administrator's exercise of discretion was unreasonable and forbade it from using certain standards moving forward, but it also established its *own* detailed substantive standards by which the plan administrator was to reprocess the nearly 67,000 claims at issue in the case. Worse, it enjoined the plan administrator to make all coverage determinations for the next ten years according to those standards, depriving the plan administrator of discretion to establish its own reasonable standards for future benefit determinations for its ERISA-plan clients. Approval of that kind of expansive remedy would dramatically reduce the ability of employers to design benefits that meet the needs of their employees and their families and to ensure affordable access to health care services.

The injunction is inconsistent with ERISA's deferential abuse-of-discretion framework, which was designed to ensure that employers can rely "on the expertise of the plan administrator rather than worry about unexpected and inaccurate plan interpretations that might result from de novo ju-

dicial review." *Conkright*, 559 U.S. at 517. Indeed, this Court has previously called for a remand to the administrator when the reevaluation of the claim is warranted in the first instance by the plan administrator. *See Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 461 (9th Cir. 1996). And it has done so precisely to avoid dictating how the administrator should exercise its own discretion in interpreting and applying the plan's terms.

The district court, however, did the opposite, dictating substantial and far-ranging terms that will cabin the plan administrator's discretion to reprocess claims for a decade to come by:

- dictating criteria for reopening and completing denied claims' administrative records (1A-ER-181-182);

- barring the plan administrator from denying claims for a reason other than one previously identified and barring denial for prior failure to appeal (1A-ER-183);

- dictating the criteria to be applied on remand, including by identifying the particular publication's standard that must be applied (1A-ER-182-183);

- dictating the particular procedures that must be followed if the plan administrator denies or if it grants a reprocessed claim (1A-ER-183-185);

- requiring certification and reporting of the plan administrator's reprocessing results (1A-ER-186); and

- ordering development of a training program that must be shown to employees (1A-ER-188-189).

Further, the plan administrator must complete everything under the supervision of a Special Master at the administrator's expense (1A-ER-189), within the deadlines set by the Court (1A-ER-189-190), and presumptively comply for *10 years* (1A-ER-187), as well as pay plaintiffs' attorney fees (1A-ER-190).

These detailed requirements undermine ERISA's delegation of substantial discretion to an employer-sponsored health plan's designated administrator. Instead, the district court, effectively, decided what a health plan must cover, contrary to ERISA's scheme of leaving substantive coverage criteria to the discretion of the employer-sponsor and the plan administrators they retain.

The district court's choice of particular guidelines is especially problematic for ERISA plan administrators. The district court essentially assumed for itself the role of reviewing the guidelines to be applied by holding a multi-week trial, hearing expert testimony, and then drawing its *own* conclusion about what the substantive coverage standards should be. That fundamentally usurps the employer-sponsor's and plan administrator's role.

Further, guidelines are simply that—guidelines—for an administrator's exercise of discretion in applying ambiguous terms of a plan. The district court, however—by incorporating and mandating application of particular medical publications—has effectively removed *any* discretion at all, even though surely reasonable minds could differ as to the baseline accepted standards of care. Clinical leaders for employers and health insurance pro-

19

viders need discretion to use their own expert processes to design benefits that meet the needs of those they serve.

The publications that the district court chose also illustrate why plan administrators—and not courts—should be the ones evaluating whether a particular guideline fits. For example, the InterQual criteria "are nationally recognized, third-party guidelines" "used to assess the level of care for mental health patients" (*Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.*, 852 F.3d 105, 109, 114 (1st Cir. 2017)), as are the MCG Care Guidelines (formerly known as the Milliman Clinical Guidelines), "a nationally recognized clinical decision support tool" (*Becker v. Chrysler LLC Health Care Benefits Plan*, 691 F.3d 879, 887 n.37 (7th Cir. 2012)). The publications serve as comprehensive guides for many conditions. As such, plans may rely on these guidelines to evaluate claims across a plan's coverage.

The district court, however, selected guidelines from ASAM, LOCUS, CASII, and ECSII. These publications were developed for use by providers to evaluate the necessary level of care narrowly tailored to the particular conditions each addresses. As a result, the plan administrator must now consult *four additional publications* to adjudicate claims for only two primary diagnoses that vary by age group. Were the district court's order replicated across the thousands of diagnoses for which a plan administrator processes claims, plan administrators could be required to consult many multiples of thousands of publications to adjudicate claims, all under penalty of violating a court or-

der. This stands to impose a substantial administrative burden for plans, contrary to ERISA's design.

It also eliminates a plan administrator's discretion to interpret the plan term "generally accepted standards of care" by dictating how exactly discretion must be exercised in every case. But courts are particularly ill-equipped to exercise this type of discretion. Among other things, a court entering a prospective remedy cannot adequately account for future administrative complexities. Requiring compliance with the district court's chosen guidelines for 10 more years adds yet more difficulty, as courts are ill-equipped to keep up with medical developments and the changing landscape of pertinent publications. But the plan administrator has now been stripped of its plan-delegated discretion to re-evaluate and update guidance as developments occur.

The Supreme Court has rejected similar judicial attempts to impose particular rules on an ERISA plan's claim-processing choices. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831-832 (2003). In rejecting a requirement that an ERISA plan must give special weight to a treating physician's opinion, the Court emphasized the Secretary of Labor's "view that ERISA is best served by 'preserv[ing] the greatest flexibility possible for . . . operating claims processing systems consistent with the prudent administration of a plan.'" *Id.* at 833 (quoting the Department of Labor's website). The district court's decision does the opposite. It erases ERISA plans' flexibility by dictating the particular criteria that must be used to determine eligibil-

ity for benefits for the next 10 years. That runs headlong into the admonition that "[i]ntelligent resolution of the question whether routine deference to the opinion of a claimant's treating physician would yield more accurate disability determinations . . . might be aided by empirical investigation of the kind courts are ill equipped to conduct." *Id.* at 832. The same reasoning fits the decision of which standards should guide coverage determinations under an ERISA plan.

Unless corrected now, the decision below will inevitably be replicated in cases across the country. Indeed, a substantial volume of cases have already relied on the decision below, painting the clear picture that it will have a watershed effect on available remedies. *See supra* n.2.

And that effect will be to place federal courts nationwide into the role of ERISA administrator. Proliferation of court orders and injunctions dictating claims-processing decisions far into the future also threatens to undermine ERISA's goal of promoting "a single uniform national scheme for the administration of [an] ERISA plan[]." *Gobeille*, 136 S. Ct. at 947. Depending on how any particular beneficiary defines the class, plan administrators could be subject to a similar patchwork of requirements that ERISA sought to avoid. *Id.* Much like having "to master the relevant laws of 50 States" (*id*. at 944), plans having to comply with the rules of 94 federal district courts would generate those very same administrative inefficiencies that cost the plan substantial

money to administer and would likely urge employers to reconsider whether to offer benefit plans in the first instance.

Hamstringing ERISA plans and their administrators in coverage decisions by placing district courts in the role of plan administrator is practically unsound and legally inconsistent with ERISA.

## CONCLUSION

The Court should reverse and remand with instructions to decertify the classes and enter judgment for United Behavioral Health.

March 26, 2021                                    Respectfully submitted,

/s/ *Michael B. Kimberly*

MICHAEL B. KIMBERLY
SARAH P. HOGARTH
   *McDermott Will & Emery LLP*
   *500 North Capitol Street NW*
   *Washington, DC 20001*
   *(202) 756-8000*

JOSHUA B. SIMON
WARREN HASKEL
RICHARD DIGGS
   *McDermott Will & Emery LLP*
   *340 Madison Avenue*
   *New York, NY 10173*
   *(202) 547-5400*

*Counsel for America's Health Insurance Plans, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Appellate Rule 32(g) and Circuit Rule 32-1, I hereby certify that this brief:

(i)     complies with the word limit of Rule 29(a)(5) because it contains 5,314 words, excluding the parts of the brief exempted by Rule 32(f); and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6).

*/s/ Michael B. Kimberly*

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2021, I electronically filed the foregoing brief with the Clerk of this Court using the CM/ECF system, and counsel for all parties will be served by the CM/ECF system.

*/s/ Michael B. Kimberly*