Nos. 20-17363, 20-17364, 21-15193, 21-15194

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DAVID WIT, et al.,

*Plaintiffs-Appellees,*

v.

UNITED BEHAVIORAL HEALTH,

*Defendant-Appellant.*

GARY ALEXANDER, et al.,

*Plaintiffs-Appellees,*

v.

UNITED BEHAVIORAL HEALTH,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of California
Nos. 3:14-cv-2346, 3:14-cv-5337 | Hon. Joseph C. Spero

## DEFENDANT-APPELLANT'S RESPONSE TO PLAINTIFFS-APPELLEES' PETITION FOR PANEL REHEARING AND REHEARING EN BANC

Jennifer S. Romano
Andrew Holmer
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
(213) 622-4750

April N. Ross
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 624-2500

Miguel A. Estrada
*Counsel of Record*
Geoffrey M. Sigler
Lucas C. Townsend
Matthew S. Rozen
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
MEstrada@gibsondunn.com

*Attorneys for Defendant-Appellant United Behavioral Health*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ........................................................................................1

ARGUMENT ...............................................................................................4

    I.    Plaintiffs Forfeited Rehearing On The Panel's Central Merits
          Holding ................................................................................................4

    II.   Rehearing Is Not Warranted On The Panel's Reprocessing Holding........8

    III.  Rehearing Is Not Warranted On The Panel's Exhaustion Holding .........13

CONCLUSION ..........................................................................................18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albemarle Paper Co. v. Moody*,
  422 U.S. 405 (1975)...........................................................................18

*Amato v. Bernard*,
  618 F.2d 559 (9th Cir. 1980) ...............................................14, 15, 18

*Arctic Slope Native Ass'n, Ltd. v. Sebelius*,
  583 F.3d 785 (Fed. Cir. 2009) ..........................................................18

*Berceanu v. UMR, Inc.*,
  2023 WL 1927693 (W.D. Wis. Feb. 10, 2023) .............................5, 10

*Bowen v. City of New York*,
  476 U.S. 467 (1986)...........................................................................14

*Buffonge v. Prudential Ins. Co. of Am.*,
  426 F.3d 20 (1st Cir. 2005)...........................................................11, 12

*Califano v. Sanders*,
  430 U.S. 99 (1977)..............................................................................14

*Canseco v. Constr. Laborers Pension Tr.*,
  93 F.3d 600 (9th Cir. 1996) ...............................................................12

*Castillo v. Metro. Life Ins. Co.*,
  970 F.3d 1224 (9th Cir. 2020) ...........................................................13

*City of Emeryville v. Robinson*,
  621 F.3d 1251 (9th Cir. 2010) ...........................................................14

*Conkright v. Frommert*,
  559 U.S. 506 (2010).............................................................................7

*Conley v. Pitney Bowes*,
  34 F.3d 714 (8th Cir. 1994) ...............................................................16

*Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.*,
  33 F.3d 390 (4th Cir. 1994) .................................................................4

*Diaz v. United Agric. Emp. Welfare Benefit Plan & Tr.*,
    50 F.3d 1478 (9th Cir. 1995) .................................................................14

*Durham v. Health Net*,
    108 F.3d 337 (9th Cir. 1997) ...................................................................10

*Elliott v. Metro. Life Ins. Co.*,
    473 F.3d 613 (6th Cir. 2006) ...................................................................12

*Fallick v. Nationwide Mut. Ins. Co.*,
    162 F.3d 410 (6th Cir. 1998) ...................................................................14

*Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*,
    491 F.3d 1180 (10th Cir. 2007) ...............................................................16

*Gagliano v. Reliance Standard Life Ins. Co.*,
    547 F.3d 230 (4th Cir. 2008) ...................................................................11

*Greany v. W. Farm Bureau Life Ins. Co.*,
    973 F.2d 812 (9th Cir. 1992) ...................................................................17

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
    571 U.S. 99 (2013).....................................................................................17

*In re Household Int'l Tax Reduction Plan*,
    441 F.3d 500 (7th Cir. 2006) ............................................................15, 16

*Kirkendall v. Halliburton, Inc.*,
    707 F.3d 173 (2d Cir. 2013) ....................................................................17

*Lafleur v. La. Health Serv. & Indem. Co.*,
    563 F.3d 148 (5th Cir. 2009) ...................................................................12

*Ligotti v. United Healthcare Servs., Inc.*,
    542 F. Supp. 3d 1301 (S.D. Fla. 2021) ...................................................17

*McCartha v. Nat'l City Corp.*,
    419 F.3d 437 (6th Cir. 2005) ...................................................................10

*Melech v. Life Ins. Co. of N. Am.*,
    739 F.3d 663 (11th Cir. 2014) .................................................................12

*Metro. Life Ins. Co. v. Glenn*,
    554 U.S. 105 (2008) .......................................................................... 16

*Miller v. Am. Airlines, Inc.*,
    632 F.3d 837 (3d Cir. 2011) ............................................................. 12

*Nelson v. EG&G Energy Measurements Grp., Inc.*,
    37 F.3d 1384 (9th Cir. 1994) ............................................................ 16

*R.I. Dep't of Env't Mgmt. v. United States*,
    304 F.3d 31 (1st Cir. 2002) ................................................................. 5

*Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability
    Income Plan*,
    85 F.3d 455 (9th Cir. 1996) .............................................................. 11

*Sandgathe v. Maass*,
    314 F.3d 371 (9th Cir. 2002) .............................................................. 4

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
    770 F.3d 1282 (9th Cir. 2014) .......................................................... 17

*Vaught v. Scottsdale Healthcare Corp. Health Plan*,
    546 F.3d 620 (9th Cir. 2008) ...................................................... 15, 16

*Vizcaino v. Microsoft Corp.*,
    120 F.3d 1006 (9th Cir. 1997) (en banc) .................................... 12, 13

*Watts v. BellSouth Telecomms., Inc.*,
    316 F.3d 1203 (11th Cir. 2003) ........................................................ 17

*Wert v. Liberty Life Assurance Co. of Bos.*,
    447 F.3d 1060 (8th Cir. 2006) .......................................................... 16

*Wilson v. UnitedHealthcare Ins. Co.*,
    27 F.4th 228 (4th Cir. 2022) ............................................................ 12

*Zall v. Standard Ins. Co.*,
    58 F.4th 284 (7th Cir. 2023) ............................................................ 12

**Statutes**

29 U.S.C. § 1132(a)(1)(B) ........................................................................12

**Rules**

9th Cir. R. 28-1(b)...............................................................................4

## INTRODUCTION

Despite Plaintiffs' overblown rhetoric, the panel's decision implicates no circuit conflicts and follows well-established ERISA plan-interpretation principles. The panel also rightly rejected Plaintiffs' overreach in attempting to rewrite ERISA law to facilitate class certification. There is no basis for rehearing.

United Behavioral Health ("UBH") administers ERISA-governed health benefit plans covering mental health and substance use treatment. To facilitate determinations about whether requested services are covered, UBH promulgated lengthy, publicly available guidelines. Plaintiffs—plan members whose coverage requests UBH denied—challenged those guidelines, arguing principally that they violated plan terms because they were allegedly more restrictive than generally accepted standards of care. The district court certified a class comprising some 67,000 coverage denials, found the guidelines invalid, and ordered UBH to "reprocess" each denial under different guidelines reflecting the court's understanding of generally accepted standards. The court did all this despite never finding that the challenged guidelines caused *any* denial of benefits or that reprocessing would benefit any class member. Instead, to facilitate class certification, Plaintiffs disclaimed any claim to benefits—and sought reprocessing instead—to avoid numerous "individualized inquiries." 1-ER-65-66. The district court held that reprocessing was warranted, regardless of its ultimate effect on benefits, to vindicate an "intangible" "procedural"

right to a "fair adjudication" of Plaintiffs' individual coverage requests.  2-ER-332; 1-ER-77-82.

The panel reversed, rejecting the district court's main liability ruling on the merits.  It held that the plans did not "mandate coverage for all treatment … consistent with" generally accepted standards or otherwise "require consistency" with those standards, Dkt. 92-1, at 7, so any alleged inconsistency would not violate the plans.  On rehearing, the panel reaffirmed this holding but revived liability as to a much smaller "state-mandate" class comprising fewer than 1,000 coverage denials that allegedly violated four states' laws.  Op. 29.  The panel nonetheless limited relief for the surviving claims, holding that Plaintiffs: (1) had failed to establish their entitlement to reprocessing; and (2) were required to satisfy their plans' contractual requirements to exhaust administrative appeals before suing.  Op. 22-26, 30-32.

Although Plaintiffs tout the district court's reversed merits ruling as the "*Brown v. Board of Education* for the mental health movement," Pet. 1, they barely defend the ruling.  Their cursory argument that the guidelines were invalid, Pet. 15-16, cites no authority or evidence—it just references their earlier rehearing petition.  By neglecting this issue, Plaintiffs have forfeited it, and have acted inconsistently with their hyperbolic claims about its "nationwide" significance.  Pet. 16.  The panel correctly interpreted the plans, and that fact-bound plan-interpretation ruling creates no conflict of authority or impact on other health plans.  Nor can Plaintiffs' *amici*

justify rehearing through their policy preferences, divorced from the applicable legal standards, for expanding mental health coverage beyond plan terms.

With no prospect of reviving liability as to 99% of the disputed coverage denials, the other issues Plaintiffs raise—challenging the panel's additional rulings on reprocessing and exhaustion—are largely academic. There is no evidence reprocessing would benefit *anyone* in the surviving state-mandate class—or any other class. And class members' failure to satisfy plan-imposed exhaustion requirements also bars reprocessing. Plaintiffs' argument that these requirements can be excused where exhaustion is futile or the class representative has exhausted is largely irrelevant here because the panel determined that exhaustion would *not* have been futile, and only one state covered by the state-mandate class had a class representative who exhausted.

Nor is there any circuit conflict on any issue. Plaintiffs mischaracterize the panel decision as eliminating courts' authority to order reprocessing. But the decision permits reprocessing when plaintiffs show a sufficient possibility of obtaining benefits on remand—a showing Plaintiffs expressly disclaimed to facilitate class certification. That holding is fully consistent with settled practice, Plaintiffs' authorities, and the position of the Department of Labor ("DOL"), which agreed with UBH on this issue at the merits stage and now expressly takes no position on class certification of Plaintiffs' reprocessing claims. Dkt. 137 ("DOL Br."), at 3.

As to exhaustion, Plaintiffs conflate the plan-imposed exhaustion requirement at issue here with the separate, judge-made requirement addressed in other cases. Plaintiffs' own cases repeatedly recognize the distinction. None excuses exhaustion when expressly required by the plan, which would violate ERISA's central goal of enforcing the plan as written.

Rehearing should be denied.

## ARGUMENT

### I.  Plaintiffs Forfeited Rehearing On The Panel's Central Merits Holding

Plaintiffs devote just 273 words to seeking rehearing on the supposedly landmark ruling at the center of this case—the lawfulness of UBH's guidelines. Pet. 15-16. With no basis for rehearing on that issue, none of Plaintiffs' other rehearing arguments matters for 99% of the class. UBH thus begins with this issue even though Plaintiffs bury it at the end of their petition.

In addressing this issue, Plaintiffs assert no circuit conflict, cite no authority, and cite the record just once, in a footnote, to describe the ruling below. Pet. 15-16 & n.12. Their main citation—to their prior rehearing petition—contravenes this Court's rule prohibiting "incorporat[ion] by reference" of prior "briefs." 9th Cir. R. 28-1(b). That "entirely improper way of presenting argument," *Sandgathe v. Maass*, 314 F.3d 371, 380 n.8 (9th Cir. 2002), has been "consistently and roundly condemned by the Courts of Appeals," *Cray Commc'ns, Inc. v. Novatel Comput.*

4

*Sys., Inc.*, 33 F.3d 390, 396 n.6 (4th Cir. 1994). The Court should therefore "deem th[ese] argument[s] … forfeited." *R.I. Dep't of Env't Mgmt. v. United States*, 304 F.3d 31, 47 n.6 (1st Cir. 2002).

Even if their assertions were not forfeited, Plaintiffs offer nothing new since the Court denied their first rehearing request on this issue. The issue thus remains unworthy of rehearing for the same reasons it was before. Dkt. 119, at 9-15.

There is nothing exceptional about the panel's interpretation of the particular plan documents here. Plaintiffs *still* provide no support for their sweeping claim that "[v]irtually every health plan in America works like the plans here." Pet. 16. Even if some non-UBH plans referenced generally accepted standards, that language's import would depend on specific plan language in the context of other plan provisions. Plaintiffs cite no case—in the more than six years since the district court held that UBH's plans "require coverage consistent with" generally accepted standards, 2-ER-368—that has relied on that holding to interpret a non-UBH plan. One court recently *rejected* Plaintiffs' interpretation in a case challenging a UBH affiliate's use of the same UBH guidelines challenged here—and even on those similar facts, the court independently interpreted the plans rather than relying on this precedent. *Berceanu v. UMR, Inc.*, 2023 WL 1927693, at *11 (W.D. Wis. Feb. 10, 2023). Nor do Plaintiffs identify any overarching *legal* requirement—apart from specific plan terms—mandating compliance with generally accepted standards.

5

With or without rehearing, the panel's decision would not control interpretation of other plans.

Plaintiffs' *amici*—many of them provider organizations with a direct financial stake in expanding coverage—thus remain mistaken in viewing this case as a vehicle to increase access to mental health and substance use treatment. Tellingly, DOL has not called for rehearing on plan interpretation. DOL Br. 2 n.1. There is simply no reason to believe that the panel's decision regarding specific language in UBH's plans will materially impact "the nation's fight against the mental health and addiction crisis." Pet. 4.

In any event, the panel was correct. The plans do not require "consistency with" generally accepted standards. Op. 29. They "*exclude* coverage for treatment inconsistent with" those standards, but do not "*compel* UBH to cover all treatment that is consistent with" those standards. *Id.* (emphasis altered). The panel was right to reject, yet again, Plaintiffs' attempts to transform a coverage exclusion into an affirmative and universal basis for coverage.

Plaintiffs counter by shifting their focus from coverage to "medical necessity." Pet. 15. But their merits brief never made this argument and mentioned "medical necessity" just twice. Dkt. 50-1, at 5, 13. One set of guidelines Plaintiffs challenged—the "Coverage Determination Guidelines"—had nothing to do with medical necessity. They were applied to plans that lacked a medical necessity

requirement, 2-ER-247, and were expressly designed to "'assis[t] in interpreting'" UBH's plans as a whole—not just generally accepted standards, Dkt. 25 ("UBH Br."), at 48. The other challenged guidelines—the "Level of Care Guidelines"— were applied to plans that covered only "medically necessary" services, 2-ER-247, but consistency with generally accepted standards is just one *component* of that requirement. For example, many plans' definitions of "medical necessity" also required that the services be "not more costly" than an equivalent "alternative." ECF No. 435-3, at 130-31. Consistency with generally accepted standards is a separate and additional requirement, meaning it is a necessary but not sufficient condition for medical necessity.

Plaintiffs cite no contrary plan provision. And they no longer dispute that UBH's interpretation is entitled to substantial "deference" because each plan grants UBH "'discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Conkright v. Frommert*, 559 U.S. 506, 512 (2010); 2-ER-253; Op. 27.

Plaintiffs and their *amici* respond not with legal argument, but with policy. *E.g.*, Dkt. 132, at 12-18. But courts have no authority to rewrite ERISA plans, and attempts to legislate greater mental health coverage are not grounds for rehearing.

## II.      Rehearing Is Not Warranted On The Panel's Reprocessing Holding

The panel also held that Plaintiffs had not proved entitlement to reprocessing. To avoid a key barrier to class certification—the numerous "individualized inquiries" necessary for a traditional ERISA benefits claim—Plaintiffs disclaimed any benefits claims, alleged a pure process injury, and claimed a procedural right to reprocessing even if it would make no difference because reprocessing could not possibly alter the denial of benefits (for any number of reasons).  1-ER-65-66.  The panel rightly recognized that excusing Plaintiffs from these traditional individual showings to facilitate class certification would violate the Rules Enabling Act. Op. 23-25.

Given Plaintiffs' largely unchallenged loss on the merits, rehearing on this issue would serve little purpose.  The panel's plan-interpretation ruling eliminates any basis for reprocessing beyond the state-mandate class, Pet. 10 n.4, comprising just "hundreds" of individuals, 2-ER-353—a tiny fraction of the 67,000 disputed coverage determinations.  There is no evidence *any* of these claimants would benefit from reprocessing, and the available evidence shows many would not.  Many denials were already based in part on the guidelines Plaintiffs contend UBH should have used.  1-ER-207.  Even when UBH did not apply these specific guidelines, many requests likely would have been denied anyway under the state-mandated guidelines, plan terms not challenged here, or because UBH approved coverage for alternative

treatment, and the claimant chose to pursue that option instead of the treatment for which coverage was denied.  UBH Br. 28-31.  Classwide reprocessing thus would not advance the sea change that Plaintiffs claim justifies en banc review—at most, it would involve UBH re-examining a relatively small group of claims, many of which likely would be denied again.[1]

Further, Plaintiffs' arguments for rehearing depend on a mischaracterization of the panel's ruling.  The panel never disputed that reprocessing is "authorized by ERISA," nor did it "effectively eliminat[e]" reprocessing in denial-of-benefits cases.  Pet. 3, 5; DOL Br. 6-7.  Rather, the panel *agreed* with Plaintiffs that reprocessing is available in appropriate circumstances.  Op. 24.  The panel simply recognized that reprocessing is not an end in itself, but rather a "*means*" of securing benefits.  Op. 25.  As DOL concedes, "the pursuit of benefits in the end … is what gives the claimant standing and a right to sue in the first place."  DOL Br. 9.  As a result, reprocessing is available only where the plaintiff "show[s] that she may be entitled to a positive

---

[1] Nor can Plaintiffs resuscitate reprocessing for the full 67,000-denial class by arguing that the panel upheld their victory on fiduciary duty claims.  Pet. 3.  The panel understood those claims as seeking only forward-looking relief, not reprocessing, and it preserved them only insofar as "they were not intertwined with an incorrect interpretation of the Guidelines as inconsistent with the Plan terms."  Op. 14-15, 23 n.4, 30 & n.5.  But Plaintiffs did not pursue freestanding fiduciary duty claims separate from claims based on generally accepted standards and state mandates.  2-ER-238-239, 364.

benefits determination if outstanding factual determinations were resolved in her favor." Op. 24.

This ruling does not require courts to resolve all of those outstanding factual determinations. But where independent plan exclusions or other grounds preclude benefits irrespective of the disputed issues, reprocessing is futile and wasteful, and thus unavailable. *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 446-47 (6th Cir. 2005). Those independent grounds indisputably exist here for many class members. UBH Br. 28-31; *see*, *e.g.*, 13-ER-2735; 15-ER-3066, 3068-3070, 3072-3073, 3081-3082. Indeed, DOL acknowledged at the merits stage that reprocessing "may be inappropriate as to that subset of claims, unless the court rejects those independent grounds"—and no Plaintiff challenged any independent ground. Dkt. 55, at 26 & n.5. Moreover, up to 65% of class members may have chosen to pursue alternate treatment—there is no evidence they ever received the requested treatment—so they could not obtain any reimbursement or other benefits in a reprocessing. Dkt. 69, at 8. This Court's longstanding precedent precludes relief for such individuals, *see Durham v. Health Net*, 108 F.3d 337, 337 (9th Cir. 1997), as another district court recently recognized (citing *Durham*) in decertifying a virtually identical reprocessing class action, *Berceanu*, 2023 WL 1927693, at *7-8.

The panel's decision here was thus straightforward, because Plaintiffs entirely "*declin*[*ed*] to show that reprocessing might allow any plaintiff or class member to

10

recover benefits." Op. 26 (emphasis added). The problem is not simply, as DOL implies, that Plaintiffs neglected to "ask the court" for benefits. DOL Br. 9. Instead, Plaintiffs deliberately *disclaimed* any claim to benefits to bypass the "multitude" of "individualized inquiries" that seeking such relief would have entailed, 1-ER-65-66—a circumvention necessary to sustain a class-action vehicle that "[n]o other lawyer" had previously brought, 2-ER-392. In holding reprocessing unavailable in these unprecedented conditions, the panel did not eliminate reprocessing in ERISA cases.

With the panel's holding properly construed, Plaintiffs' arguments for rehearing necessarily fail. That holding directly *follows* from the 25 cases that Plaintiffs and DOL cite. Pet. 6-10, 6 n.2; DOL Br. 3-8, 4 n.2, 5 n.3. Those decisions are largely in the mold of *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 456-60 (9th Cir. 1996)—decisions in individual-plaintiff ERISA cases ordering reprocessing on a single, dispositive issue that, if resolved favorably through reprocessing, could lead to additional benefits. In none did plaintiffs receive a remand for a purely "procedural" violation unconnected to denial of benefits. *E.g.*, *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 240-41 (4th Cir. 2008) ("procedural violation" of ERISA "cannot afford … a substantive remedy if [plaintiff] has no entitlement to benefits under the terms of the Plan"); *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 30-32 (1st

Cir. 2005) (plaintiff's "claim of disability" was "prejudiced" by claim-processing errors); *accord Zall v. Standard Ins. Co.*, 58 F.4th 284, 297-98 (7th Cir. 2023); *Wilson v. UnitedHealthcare Ins. Co.*, 27 F.4th 228, 232-33, 250-51 (4th Cir. 2022); *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 675-76 (11th Cir. 2014); *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 157-58 (5th Cir. 2009); *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 615, 621-23 (6th Cir. 2006).

Critically, moreover, none of these cases adopts the reasoning underlying Plaintiffs' criticism of the panel's ruling. Plaintiffs rely on the second and third clauses of 29 U.S.C. § 1132(a)(1)(B), which allow plan beneficiaries to "enforce" their "rights"—or "clarify" their "future benefits"—"under the terms of the plan." But *none* of the decisions they and DOL cite supports any argument that these clauses transform reprocessing into an end in itself, divorced from any possibility of obtaining benefits. Pet. 5-6. The handful that even *mention* either clause all make clear that the only "terms of the plan" plaintiffs sought to "enforce" or "clarify" were their right to benefits due. *See Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 & n.4 (3d Cir. 2011); *Buffonge*, 426 F.3d at 27; *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1013 (9th Cir. 1997) (en banc); *Canseco v. Constr. Laborers Pension Tr.*, 93 F.3d 600, 605-06 (9th Cir. 1996). Plaintiffs have never sought to "enforce" or "clarify" any plan term beyond their right to benefits due—nor do the plans spell out any right to "'full and fair review by the appropriate named fiduciary'" untethered

12

from payment of benefits, Pet. 7 (emphasis omitted); *see* UBH Br. 40—so these clauses cannot be used to justify reprocessing outside of a claim for benefits.

The panel's reprocessing holding thus creates no conflict of authority and will not adversely impact any other cases. For years, individual ERISA plaintiffs have shown that if the identified issue is resolved in their favor, they will obtain benefits on remand. The panel's ruling imposes no additional requirements for those plaintiffs. Nor will the decision impact class-action practice, since by Plaintiffs' own account in seeking attorney fees, "[n]o other" plaintiff has ever obtained the type of classwide reprocessing at issue here. 2-ER-392. Plaintiffs (and DOL) fail to cite *any* decision that ordered reprocessing in a class action to correct individual coverage denials; the *sole* class-action decision they cite that approved reprocessing involved no individualized issues, nor was class certification even disputed. *Vizcaino*, 120 F.3d at 1009, 1013. Far from having "nightmarish practical consequences," Pet. 9, the panel's decision will not change existing practice at all.

## III. Rehearing Is Not Warranted On The Panel's Exhaustion Holding

Plaintiffs also seek to revive two purported exceptions to exhaustion—where exhaustion is futile, and where a named plaintiff exhausted but class members did not. Pet. 4. Courts have applied these judge-made exceptions to limit the judge-made "prudential exhaustion requirement," *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1228 (9th Cir. 2020), which requires ERISA plaintiffs to exhaust their

plans' administrative remedies before filing suit where doing so advances "sound policy," *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980). But the panel held that these exceptions do not apply when the plan itself expressly *requires* exhaustion, and the requirement is therefore "contractual" rather than prudential. Op. 30-32.

As with reprocessing, the issues are largely academic because the disputed exceptions would be largely inapplicable on these facts. The panel determined that exhaustion was *not* futile here. Op. 31.[2] Further, there was no named Plaintiff for three of the four states covered by the state-mandate class—the only class remaining—so class members from those states cannot avoid exhaustion on that basis either. 2-ER-231, 347. That leaves, at most, a few hundred class members from one state

---

[2] Plaintiffs offer no basis for reconsidering that fact-bound conclusion. They waived any challenge by "failing to address" it "except in a footnote." *City of Emeryville v. Robinson*, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010); Pet. 14-15 n.11. And their footnote is meritless. The standard for futility in an ERISA case is set by *Diaz v. United Agricultural Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1485 (9th Cir. 1995)—which requires proof that exhaustion was "demonstrably doomed to fail"—not *Bowen v. City of New York*, 476 U.S. 467 (1986), which applied the weaker exhaustion standard for "constitutional questions," where "availability of judicial review is presumed," *Califano v. Sanders*, 430 U.S. 99, 109 (1977). Contrary to Plaintiffs' assertion, *Fallick v. Nationwide Mutual Insurance Co.*, 162 F.3d 410 (6th Cir. 1998), did not "appl[y] *Bowen*" in the "ERISA context"—or even cite it. Pet. 15 n.11. Under the correct standard set by *Diaz*, exhaustion was not doomed to fail—and thus was not futile—because many plan members "successfully appealed" initial denials of benefits (in about 15-20% of appeals). Op. 31; *see* UBH Br. 63.

(Illinois), who may not benefit at all from reprocessing even if the panel's reprocessing and exhaustion holdings are reversed. Reviving some uncertain prospect of relief for this sliver of the class is not a prudent use of this Court's resources.

Practical effects aside, Plaintiffs identify no conflict warranting rehearing. Instead, they simply invoke cases that applied the prudential exhaustion requirement. Pet. 10-14. To manufacture a conflict, Plaintiffs deny the distinction between that requirement and the contractual exhaustion requirement, but their own cases distinguish between the two, *see*, *e.g.*, *In re Household Int'l Tax Reduction Plan*, 441 F.3d 500, 502 (7th Cir. 2006), and recognize that the outcome under Plaintiffs' proposed exceptions "would be different" had the plans expressly mandated pre-suit exhaustion, *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 632 n.4 (9th Cir. 2008). That is the case here because UBH's plans contain language "explicitly mandat[ing] exhaustion"—*e.g.*, "'You cannot bring any legal action against us to recover reimbursement until you have [exhausted].'" Op. 17, 31.

In Plaintiffs' cases, by contrast, the plans simply made administrative remedies available, but did not contain language "requir[ing]" exhaustion before suit "as a matter of contract." *Vaught*, 546 F.3d at 630, 632 n.4; *see Amato*, 618 F.2d at 562 n.1 (plan-imposed deadline to appeal or else "waiv[e]" the "right to reconsideration" by the plan). The obligation to exhaust pre-suit was "court-promulgated," so

15

courts could "recogniz[e] exceptions to [their] prudential exhaustion requirement." *Vaught*, 546 F.3d at 626 & n.2; *contra* Pet. 13 (misrepresenting *Vaught*).

Plaintiffs' asserted conflict on class-member exhaustion is particularly thin, comprising just two cases: one that expressly endorsed the panel's distinction between prudential and contractual exhaustion, *Household*, 441 F.3d at 502, and another that merely "adopted [*Household*'s] reasoning," Pet. 4, in *dicta*, in a footnote, *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1193 n.5 (10th Cir. 2007) (citing *Household* but noting the defendant had "not challenged" the class definition), *abrogated by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

Plaintiffs claim other cases reject the prudential/contractual distinction, Pet. 13-14, but they do not.  Indeed, Plaintiffs fail to mention that one of those cases, *Conley v. Pitney Bowes*, 34 F.3d 714 (8th Cir. 1994), is not even good law on the proposition for which Plaintiffs cite it.  *See Wert v. Liberty Life Assurance Co. of Bos.*, 447 F.3d 1060, 1065 (8th Cir. 2006) ("[T]he quoted passages from … *Conley*, do not represent holdings from our court.").  *Nelson v. EG&G Energy Measurements Group, Inc.*, 37 F.3d 1384 (9th Cir. 1994), meanwhile, simply applied "futil[ity]" in the absence of a contractual exhaustion requirement.  *Id.* at 1388.  And the rest merely adopt a narrow exception to prudential exhaustion when plans expressly make exhaustion "optional," estopping defendants from arguing otherwise.

16

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1299 (9th Cir. 2014); *see Ligotti v. United Healthcare Servs., Inc.*, 542 F. Supp. 3d 1301, 1326-27 (S.D. Fla. 2021) (explaining the "narrow" exception of *Watts v. BellSouth Telecommunications, Inc.*, 316 F.3d 1203 (11th Cir. 2003)); *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 180 (2d Cir. 2013) (plan language "'permitting'" suit (quoting *Watts*, 316 F.3d at 1209-10)).  That exception does not swallow the basic prudential/contractual distinction, which dissolves Plaintiffs' asserted conflicts because their cases address only prudential exhaustion.

Only one of Plaintiffs' *amici* even mentions exhaustion—"from a policy perspective"—presenting no legal argument.  Dkt. 133-2, at 12.  *Amici*'s silence undercuts Plaintiffs' baseless claims of circuit conflict.

In any event, the panel was correct that courts cannot excuse contractual exhaustion requirements.  "'The plan'" is "'the center of ERISA,'" so courts must "enforc[e] plan terms as written." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013).  That includes enforcing plan-imposed time limits on filing suit, *id.* at 102, even though those limits do not appear in the text of "ERISA itself," Pet. 13.  And here, it includes enforcing plan-imposed requirements to exhaust presuit, which courts also "cannot alter or override."  Op. 31; *see also Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992) (rejecting equitable

17

exceptions "inconsistent with the written plan").[3]  Contrary to Plaintiffs' suggestion, courts have no office to question plans' "rationale" for requiring exhaustion, Pet. 11—but regardless, exhaustion plainly furthers the "sound policy" of allowing administrators to "refin[e]" issues to "assist" (or obviate) later court review, *Amato*, 618 F.2d at 568; *cf.* Pet. 5-6 (agreeing that "administrator[s]" should review "first").

In addition to violating ERISA, Plaintiffs' request to excuse class-member exhaustion contravenes the Rules Enabling Act, which forbids interpreting Rule 23 to permit class certification "abridg[ing]" UBH's contractual rights.  Op. 32.  Plaintiffs' failure even to address this independent rationale for the panel's decision is yet another reason to deny rehearing.

## CONCLUSION

Plaintiffs' petition should be denied.

---

[3] Plaintiffs find no support in cases addressing Title VII's *statutory* exhaustion requirement, Pet. 10 & n.5, which "Congress" relaxed by statute in that specific context.  *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975).  "As the Supreme Court has made clear," those decisions rest on Title VII's "specific language and legislative history," which is "inapplicable" to "other statutes," *Arctic Slope Native Ass'n, Ltd. v. Sebelius*, 583 F.3d 785, 794 (Fed. Cir. 2009), including ERISA.

Dated: April 20, 2023                    Respectfully submitted.

                                         */s/ Miguel A. Estrada*

Jennifer S. Romano                       Miguel A. Estrada
Andrew Holmer                               *Counsel of Record*
CROWELL & MORING LLP                      Geoffrey M. Sigler
515 South Flower Street, 40th Floor       Lucas C. Townsend
Los Angeles, CA  90071                    Matthew S. Rozen
(213) 622-4750                            GIBSON, DUNN & CRUTCHER LLP
                                         1050 Connecticut Avenue, N.W.
April N. Ross                            Washington, D.C.  20036
CROWELL & MORING LLP                      (202) 955-8500
1001 Pennsylvania Avenue, N.W.            MEstrada@gibsondunn.com
Washington, D.C.  20004
(202) 624-2500

    *Attorneys for Defendant-Appellant United Behavioral Health*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)**   | 20-17363, 20-17364, 21-15193, 21-15194 |

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: | 4,198 | .

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/Miguel A. Estrada |   **Date** | April 20, 2023 |
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 11**                                                                 *Rev. 12/01/2021*