**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID WIT; NATASHA WIT; BRIAN MUIR; BRANDT PFEIFER, on behalf of the Estate of his deceased wife, Lauralee Pfeifer; LORI FLANZRAICH, on behalf of her daughter Casey Flanzraich; CECILIA HOLDNAK, on behalf of herself, her daughter Emily Holdnak; GARY ALEXANDER, on his own behalf and on behalf of his beneficiary son, Jordan Alexander; CORINNA KLEIN; DAVID HAFFNER, on behalf of themselves and all others similarly situated, | Nos. 20-17363 21-15193 D.C. No. 3:14-cv-02346-JCS ORDER AND OPINION |

*Plaintiffs-Appellees*,

LINDA TILLITT; MARY JONES,

*Intervenor-Plaintiffs-Appellees*,

v.

UNITED BEHAVIORAL HEALTH,

*Defendant-Appellant*.

|  |  |
|---|---|
| GARY ALEXANDER, on his own behalf and on behalf of his beneficiary son, Jordan Alexander; CORINNA KLEIN; DAVID HAFFNER, on behalf of themselves and all others similarly situated, | Nos. 20-17364 21-15194 D.C. No. 3:14-cv-05337-JCS |
| *Plaintiffs-Appellees*, | |
| MICHAEL DRISCOLL, | |
| *Intervenor-Plaintiff-Appellee*, | |
| v. | |
| UNITED BEHAVIORAL HEALTH, | |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Northern District of California
Joseph C. Spero, Magistrate Judge, Presiding

Argued and Submitted August 11, 2021
San Francisco, California

Filed August 22, 2023

Before:  Morgan Christen and Danielle J. Forrest, Circuit
Judges, and Michael M. Anello,[*] District Judge.

Order;
Opinion by Judge Anello

## SUMMARY[**]

### Employee Retirement Income Security Act

The panel filed (1) an order vacating a prior opinion,
replacing it with a new opinion, granting a petition for panel
rehearing, and denying as moot a petition for rehearing en
banc; and (2) an opinion affirming in part and reversing in
part the district court's judgment, after a bench trial, finding
United Behavioral Health ("UBH") liable under ERISA for
breach of fiduciary duties and wrongful denial of benefits,
and awarding declaratory and injunctive relief, to three
classes of plaintiffs who were beneficiaries of ERISA-
governed health benefit plans for which UBH was the claims
administrator.

The panel held that plaintiffs had Article III standing to
bring their claims.  Plaintiffs sufficiently alleged a concrete
injury as to their fiduciary duty claim because UBH's
alleged violation presented a material risk of harm to
plaintiffs' interest in their contractual benefits.  Plaintiffs

---

[*] The Honorable Michael M. Anello, United States District Judge for the
Southern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

also alleged a concrete injury as to the denial of benefits claim. Further, plaintiffs alleged a particularized injury as to both claims because UBH's Level of Care Guidelines and Coverage Determination Guidelines for making medical necessity or coverage determinations materially affected each plaintiff. And plaintiffs' alleged injuries were "fairly traceable" to UBH's conduct.

The panel held that the district court did not err in certifying the three classes to pursue the fiduciary duty claim, but the panel reversed the district court's certification of the denial of benefits classes. The panel held that, by certifying the denial of benefits classes without limiting the classes to those with claims that UBH denied under a specific Guidelines provision or provisions challenged in this litigation that applied to the claimant's own request for benefits, the certification order improperly enlarged or modified plaintiffs' substantive rights in violation of the Rules Enabling Act.

The panel held that, on the merits, the district court erred to the extent it determined that the ERISA plans required the Guidelines to be coextensive with generally accepted standards of care. The panel therefore reversed the judgment on plaintiffs' denial of benefits claim. To the extent the judgment on plaintiffs' breach of fiduciary duty claim was based on the district court's erroneous interpretation of the ERISA plans, it was also reversed.

The panel remanded for the district court to answer the threshold question of whether the fiduciary duty claim was subject to the plans' administrative exhaustion requirement and, if so, whether the requirement was satisfied by unnamed class members or should otherwise be excused.

## COUNSEL

Miguel A. Estrada (argued), Geoffrey M. Sigler, Lucas C. Townsend, and Matthew S. Rozen, Gibson Dunn & Crutcher LLP, Washington, D.C.; Jennifer S. Romano and Andrew Holmer, Crowell & Moring LLP, Los Angeles, California; April N. Ross, Crowell & Moring LLP, Washington, D.C.; Nathaniel P. Bualat, Crowell & Moring LLP, San Francisco, California; for Defendant-Appellant.

Caroline E. Reynolds (argued), David A. Reiser, and Andrew N. Goldfarb, Zuckerman Spaeder LLP, Washington, D.C.; D. Brian Hufford and Jason S. Cowart, Zuckerman Spaeder LLP, New York, New York; Adam Abelson, Zuckerman Spaeder LLP, Baltimore, Maryland; Meiram Bendat, Meiram Bendat, Santa Barbara, California; John R. Stokes and Peter K. Stris, Stris & Maher LLP, Los Angeles, California; Colleen R. Smith, Stris & Maher LLP, Washington, D.C.; for Plaintiffs-Appellees.

Mark D. DeBofsky, DeBofsky Sherman Casciari Reynolds PC, Chicago, Illinois, for Amici Curiae National Association for Behavioral Healthcare, American Hospital Association, American Association for Treatment of Opioid Dependence, American Psychological Association, California Hospital Association, Federation of American Hospitals, National Association of Addiction Treatment Providers, National Council for Mental Wellbeing, and REDC Consortium

Jack R. Bierig, Alison L. Andersen, Neil Lloyd, and Wendy Qiu, Arentfox Schiff LLP, Chicago, Illinois, for Amici Curiae American Psychiatric Association, American Medical Association, California Medical Association, and American Psychiatric Association California District Branches.

Abigail K. Coursolle and Elizabeth Edwards, National Health Law Program, Los Angeles, California; Kevin Costello, Center for Health Law & Policy Innovation, Harvard Law School, Cambridge, Massachusetts; for Amici Curiae National Health Law Program et. al..

Aaron M. Panner and Eric J. Maier, Kellogg Hansen Todd Figel & Frederick PLLC, Washington, D.C.; for Amici Curiae American Psychiatric Association, American Medical Association, California Medical Association, and California State Association of Psychiatrists.

Joshua B. Simon, Warren Haskel, and Richard Diggs, McDermott Will & Emery LLP, New York, New York; Michael B. Kimberly and Sarah P. Hogarth, McDermott Will & Emery LLP, Washington, D.C.; for Amicus Curiae America's Health Insurance Plans.

Daryl Joseffer and Jennifer B. Dickey, United States Chamber Litigation Center Inc., Washington, D.C.; Andrew J. Pincus, Archis A. Parasharami, and Daniel E. Jones, Mayer Brown LLP, Washington, D.C.; Avi M. Kupfer, Mayer Brown LLP, Chicago, Illinois; for Amicus Curiae The Chamber of Commerce of the United States of America.

Joanna S. McCallum, Manatt Phelps & Phillips LLP, Los Angeles, California; Joseph E. Laska and Nathaniel A. Cohen, Manatt Phelps & Phillips LLP, San Francisco, California; for Amicus Curiae Association for Behavior Health and Wellness.

Elena Goldstein, Acting Solicitor of Labor; G. William Scott, Associate Solicitor for Plan Benefit Security; Jeffrey Hahn, Counsel for Litigation, Melissa Moore and Stephen Silverman, Senior Attorneys; United States Department of Labor, Office of the Solicitor, Plan Benefits Security

Division, Washington, D.C.; for Amicus Curiae Secretary of Labor.

Alyssa C. George and Sejal Singh, Trial Attorneys; Jeffrey Hahn, Counsel for Appellate and Special Litigation, Wayne R. Berry, Acting Associate Solicitor for Plan Benefits Security; Seema Nanda, Solicitor of Labor; United States Department of Labor, Office of the Solicitor, Plan Benefits Security Division, Washington, D.C.; for Amicus Curiae Secretary of Labor.

Martine N. D'Agostino and Ari Dybnis, Deputy Attorneys General; Karli Eisenberg, Supervising Deputy Attorney General; Renu R. George, Senior Assistant Attorney General; Rob Bonta, California Attorney General; Oakland, California; for Amicus Curiae The State of California.

Julia Harvey, Special Assistant Attorney General; Sarah W. Rice, and Michael Field, Assistant Attorneys General; Peter F. Neronha, Rhode Island Attorney General; Rhode Island Attorney General's Office, Providence, Rhode Island; Maria R. Lenz, Assistant Attorney General, Rhode Island Supreme Court, Office of Disciplinary Counsel, Warwick, Rhode Island; Thomas Ryan, Assistant Attorney General; Clare Kindall, Solicitor General; William Tong, Connecticut Attorney General; Connecticut Attorney General's Office, Hartford, Connecticut; Sarah A. Hunger, Attorney, Attorney General's Office, Chicago, Illinois; Kwame Raoul, Illinois Attorney General; Illinois Attorney General's Office, Chicago, Illinois; Aaron M. Frey, Maine Attorney General, Augusta, Maine; Ellen F. Rosenblum, Oregon Attorney General, Salem, Oregon; Charity R. Clark, Vermont Attorney General, Montpelier, Vermont; Robert W. Ferguson, Washington Attorney General, Olympia, Washington; Anthony G. Brown, Maryland Attorney

General, Baltimore, Maryland; Dana Nessel, Michigan Attorney General, Lansing, Michigan; Aaron D. Ford, Nevada Attorney General, Carson City, Nevada; Matthew J. Platkin, New Jersey Attorney General, Trenton, New Jersey; Letitia James, New York Attorney General, New York, New York; for Amici Curiae Rhode Island, Colorado, Connecticut, Delaware, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New York, Oregon, Vermont, Washington, and the District of Columbia.

---

**ORDER**

The opinion filed on January 26, 2023, is vacated, and replaced with the concurrently filed opinion. The pending petition for panel rehearing [128] is **GRANTED.** Because we grant the petition for panel rehearing, the petition for rehearing en banc is **DENIED** as moot. The amicus curiae motions [133, 134, & 140], and motion for leave to file a reply in support of the petition for rehearing [147] are also **DENIED** as moot. Subsequent petitions for rehearing or rehearing en banc, if any, are permissible.

## OPINION

ANELLO, District Judge:

United Behavioral Health ("UBH") appeals from the district court's judgment finding it liable to classes of Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") plaintiffs under 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), as well as several pre- and post-trial orders, including class certification, summary judgment, and a remedies order. UBH contends on appeal that Plaintiffs lack Article III standing, and that the district court erred at class certification and trial in several respects. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse in part.

I

UBH is one of the nation's largest managed healthcare organizations. It administers insurance benefits for mental health conditions and substance use disorders for various commercial health benefit plans. In this role, UBH processes coverage requests made by plan members to determine whether the treatment sought is covered under the respective plans. UBH retains discretion to make these coverage determinations "for specific treatment for specific members based on the coverage terms of the member's plan."

Individually named plaintiffs David and Natasha Wit, Brian Muir, Brandt Pfeifer, Lori Flanzraich, Cecilia Holdnak, Gary Alexander, Corinna Klein, David Haffner, Linda Tillitt, and Michael Driscoll (collectively, "Plaintiffs") are all beneficiaries of ERISA-governed health benefit plans for which UBH was the claims administrator.

Plaintiffs all submitted coverage requests, which UBH denied.

Plaintiffs initiated this action on behalf of three putative classes, asserting, at issue here, two claims against UBH. The first is for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(1)(B) and "to the extent the injunctive relief Plaintiffs seek is unavailable under that section, they assert the claim under 29 U.S.C. § 1132(a)(3)(A)." Second, Plaintiffs brought an improper denial of benefits claim under 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3)(B). Both of Plaintiffs' claims hinge on a theory that UBH improperly developed and relied on internal guidelines that were inconsistent with the terms of the class members' plans and with state-mandated criteria.[1]

Among the individually named Plaintiffs, there are ten different ERISA plans. Among the class members, there may be as many as 3,000 different plans. The Parties stipulated to a sample class of 106 members, from which they submitted a sample of health insurance plans (the "Plans"). Plaintiffs alleged that the Plans required, as a condition of coverage, that treatment be consistent with generally accepted standards of care ("GASC") or were governed by state laws specifying certain criteria for making coverage or medical necessity determinations. Some of the plans administered by UBH were fully insured plans where UBH served a dual role as a plan administrator and insurer, both authorized to determine the benefits owed and responsible for paying such benefits.

---

[1] Plaintiffs also alleged that UBH developed the Guidelines to benefit its self-serving financial interests in breach of its fiduciary duties.

The Plans provide that a precondition for coverage is that treatment be consistent with GASC. The Plans contain additional conditions and exclusions, and Plaintiffs did "not dispute that a service that is consistent with [GASC] may, nonetheless, be excluded from coverage under a particular class member's plan." For example, some plans may exclude "[s]ervices that extend beyond the period necessary for evaluation, diagnosis, the application of evidence-based treatments, or crisis intervention to be effective." Some plans also may require that the service be the "least costly alternative." The Plans grant UBH discretion to interpret these various terms and determine whether a requested service is covered.

UBH employed two different processes to determine whether a requested service was covered. First, where the requested service was subject to a Plan exclusion, UBH issued an administrative denial. Administrative denials did not involve clinical reviews and are not at issue in this appeal. Second, for those claims not administratively denied, UBH conducted a clinical review, by which UBH Peer Reviewers made clinical coverage determinations. To assist with these clinical coverage determinations, UBH developed internal guidelines used by UBH's clinicians. These guidelines included the challenged Level of Care Guidelines and Coverage Determination Guidelines ("Guidelines"). The Level of Care Guidelines were used for all Plans that limited coverage to medically necessary services. The Coverage Determination Guidelines were used for all plans not containing a medical necessity requirement. The Guidelines applied across Plans and were not customized based on specific plan terms. For this reason, among others, Plaintiffs argue that the Guidelines

implemented only the plan exclusion for coverage inconsistent with GASC, which appeared in all plans.

UBH issued new Level of Care Guidelines each year, which contained several parts. Following an introduction, the Level of Care Guidelines established "Common Criteria" that applied to coverage at all levels of care. They also included sections devoted to each specific level of care, including residential treatment, intensive outpatient treatment, and outpatient treatment.[2] Applicable to both the Common Criteria and the level of care sections, the Level of Care Guidelines provided specific requirements governing patients' admittance to, continuation of, and discharge from care. For example, the 2014 Level of Care Guidelines Common Criteria provided that admission to any level of care is appropriate only where "[t]he member's current condition cannot be safely, efficiently, and effectively assessed and/or treated in a less intensive setting due to acute changes in the member's signs and symptoms and/or psychosocial and environmental factors." Another criteria for admission to any level of care was that the "[s]ervices are within the scope of the provider's professional training and licensure." Plaintiffs challenge the former as more restrictive than GASC, but they do not challenge the latter.

The Coverage Determination Guidelines were structured differently. Rather than focusing on level of care, most were organized by diagnosis. For instance, one set of Coverage Determination Guidelines addressed treatment of bulimia nervosa, while another addressed trauma- and stressor-related disorders. Each set of Coverage Determination Guidelines provided detailed information about the

---

[2] The Level of Care Guidelines included sections addressing several other levels of care, but those are not at issue in this appeal.

appropriate treatment for the specific diagnosis.  Each set of Coverage Determination Guidelines also referred to the Level of Care Guidelines.  Although the references to the Level of Care Guidelines took a variety of forms and some Coverage Determination Guidelines referred to Level of Care Guidelines only "as support in a specific paragraph or paragraphs," the district court concluded that each set of Coverage Determination Guidelines fully incorporated by reference the Level of Care Guidelines.  With the exception of the Coverage Determination Guidelines for Custodial Care, Plaintiffs challenge the Coverage Determination Guidelines only to the extent that they incorporate the Level of Care Guidelines.

Plaintiffs alleged that many aspects of the Level of Care Guidelines were more restrictive than GASC and were also more restrictive than state-mandated criteria for making medical-necessity or coverage determinations.  Plaintiffs further alleged that UBH breached its fiduciary duties to act solely in the interests of the participants and beneficiaries to develop coverage criteria consistent with GASC.  UBH also allegedly breached its fiduciary duties by developing guidelines inconsistent with criteria explicitly mandated by state laws.  Plaintiffs further contended that UBH breached its duties by promulgating self-serving, cost-cutting guidelines that are more restrictive than the Plans.  As to their denial of benefits claim, Plaintiffs argued that UBH violated ERISA by improperly denying Plaintiffs benefits based on its Guidelines, which Plaintiffs allege are more restrictive than the Plans or criteria mandated by state laws.

Plaintiffs sought certification of three proposed classes as to both claims: (1) the *Wit* Guideline Class; (2) the *Wit*

State Mandate Class; and (3) the *Alexander* Guideline Class.
The *Wit* Guideline Class was defined as:

> Any member of a health benefit plan
> governed by ERISA whose request for
> coverage of residential treatment services for
> a mental illness or substance use disorder was
> denied by UBH, in whole or in part, on or
> after May 22, 2011, based upon UBH's Level
> of Care Guidelines or UBH's Coverage
> Determination Guidelines.
>
> The *Wit* Guideline Class excludes members
> of the *Wit* State Mandate Class, as defined
> below.

The *Wit* State Mandate Class was defined as:

> Any member of a fully-insured health benefit
> plan governed by both ERISA and the state
> law of Connecticut, Illinois, Rhode Island or
> Texas, whose request for coverage of
> residential treatment services for a substance
> use disorder was denied by UBH, in whole or
> in part, [within the Class period], based upon
> UBH's Level of Care Guidelines or UBH's
> Coverage Determination Guidelines and not
> upon the level-of-care criteria mandated by
> the applicable state law. . . .

The *Alexander* Guideline Class was defined as:

> Any member of a health benefit plan
> governed by ERISA whose request for
> coverage of outpatient or intensive outpatient

> services for a mental illness or substance use
> disorder was denied by UBH, in whole or in
> part, on or after May 22, 2011, based upon
> UBH's Level of Care Guidelines or UBH's
> Coverage Determination Guidelines.
>
> The *Alexander* Guideline Class excludes any
> member of a fully insured plan governed by
> both ERISA and the state law of Connecticut,
> Illinois, Rhode Island or Texas, whose
> request for coverage of intensive outpatient
> treatment or outpatient treatment related to a
> substance use disorder.

The classes differ in that the *Wit* State Mandate Class includes members whose denial of benefits was based on UBH's Guidelines and not on state-mandated level-of-care criteria. The Guideline classes include members whose denials were based on the Guidelines and not on the terms of the Plans. The *Wit* Guideline Class included members who requested coverage of residential treatment services, whereas the *Alexander* Guideline Class included members who requested coverage of outpatient or intensive outpatient services.

For their breach of fiduciary duties claim, Plaintiffs sought injunctive and declaratory relief. As to their denial

of benefits claim, Plaintiffs sought reprocessing of their claims[3] and argued:

> Individual circumstances are . . . irrelevant to [this claim]. Plaintiffs are *not* asking this Court to determine whether Class members were owed benefits or whether UBH should be ordered to cause its plans to pay such benefits. Rather, Plaintiffs seek a reprocessing remedy, which stems directly from their allegation that UBH used an arbitrary process, premised on fatally flawed Guidelines, to deny their requests for coverage. For that reason, Plaintiffs need not prove at trial that UBH reached the wrong outcome in every single one of its coverage determinations.

UBH disagreed, arguing that individualized inquiries were needed to adjudicate the class claims, and it submitted an expert report containing examples of potential class members whose claims were denied at the initially requested level of care but who ultimately accepted alternate care, or whose claim was denied both because the requested treatment was inconsistent with the Guidelines and for other unrelated reasons.

At a class certification hearing, the district court stated: "The complaint asserts denial of benefit claims for a variety of reasons other than the restrictive guidelines theory, and the question is are those still in the case? It's transparent to

---

[3] Plaintiffs relatedly sought a declaration that UBH's denial of benefits was improper and an order for UBH to apply the new guidelines in processing future claims.

me, I guess, that you're not seeking certification on those." Plaintiffs stipulated that "if the case is certified as a class case" then "additional theories" requiring "individualized inquiries as to why UBH's denials of the named Plaintiffs' claims for benefits were wrongful" would "not be part of this case." Plaintiffs also asserted at the class certification hearing that their denial of benefits claim was "a process claim," because the claim is "about the fact that UBH used criteria that were inconsistent with the terms of the member's plans."

On September 19, 2016, the district court granted Plaintiffs' motion to certify these classes.[4] In its order, the district court stated:

> Of particular significance is the fact that Plaintiffs do not ask the Court to make determinations as to whether class members were *actually* entitled to benefits (which would require the Court to consider a multitude of individualized circumstances relating to the medical necessity for coverage and the specific terms of the member's plan).

In this same order, the district court addressed whether the class would be ascertainable, and described a UBH database containing denial letters, which could identify any

---

[4] The district court later issued an order partially decertifying the class to exclude class members who successfully appealed their coverage denials, members who were initially improperly included because of a "flaw in the method used to identify class members," and to modify the Illinois State Mandate Class period.

denial that "referenced," the Guidelines.  Later, when the district court partially decertified the class, it explained:

> First and foremost, the injury that is the basis of Plaintiffs' claims was the adoption and use of flawed Guidelines in deciding whether Plaintiffs were entitled to coverage. As the Court explained on summary judgment, such an injury is cognizable under ERISA and consistent with existing case law, which does not require that Plaintiffs demonstrate that the flaws in UBH's Guidelines were the but-for cause of the denial of their benefits.

Beginning October 16, 2017, the district court held a ten-day bench trial.  The district court, in its post-trial findings of fact and conclusions of law, relied upon Plaintiffs' representations that their denial of benefits claim was a "process claim" only, stating "Plaintiffs stipulated at the class certification stage of the case that they do not ask the Court to make determinations as to whether individual class members were actually entitled to benefits . . . .  Rather, they assert only facial challenges to the Guidelines."

The district court entered judgment in Plaintiffs' favor, concluding that UBH breached its fiduciary duties and wrongfully denied benefits because the Guidelines impermissibly deviated from GASC and state-mandated criteria.  The district court also found that financial incentives infected UBH's Guideline development process, particularly where the Guidelines "were riddled with requirements that provided for narrower coverage than is consistent with" GASC.  Based on these findings, the district court concluded that UBH breached its fiduciary duty to

comply with Plan terms and breached its duties of loyalty and care "by adopting Guidelines that are unreasonable and do not reflect" GASC. It also held that UBH improperly denied Plaintiffs benefits by relying on its restrictive Guidelines that were inconsistent with the Plan terms and state law.

The parties had stipulated, and the district court found, that the Plans gave UBH discretionary authority to create tools, such as the Guidelines, to facilitate interpretation and administration of the Plans. But the district court viewed UBH's interpretation with "significant skepticism" because it found that UBH had a financial conflict of interest and a structural conflict of interest as a dual administrator and insurer for some plans. Ultimately, the district court held that UBH's interpretation embodied in the Guidelines was unreasonable and an abuse of discretion.

In its extensive Findings of Fact and Conclusions of Law, the district court excused any unnamed class members for failing to exhaust their administrative remedies under the Plans despite acknowledging evidence that "some class members who did not exhaust available administrative remedies were required under their Plans to exhaust those remedies before they could bring a legal action against UBH." The district court cited to one of the sample plans, which states: "You cannot bring any legal action against us to recover reimbursement until you have completed all the steps [described in the plan]." The district court further found that exhaustion would have been futile.

The district court issued declaratory and injunctive relief, directed the implementation of court-determined claims processing guidelines, ordered "reprocessing" of all class members' claims in accordance with the new guidelines, and

appointed a special master to oversee compliance for ten years.

II

ERISA is a federal statute designed to regulate "employee benefit plan[s]." 29 U.S.C. § 1003(a). Congress enacted ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans," *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983), "by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts,'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (alteration in original) (quoting 29 U.S.C. § 1001(b)). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Id.*

ERISA does not "require[] employers to establish employee benefits plans." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). "Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Id.* (first citing *Shaw*, 463 U.S. at 91; and then citing *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 511 (1981)). Rather, ERISA "ensure[s] that employees will not be left empty-handed once employers have guaranteed them certain benefits." *Id.* The Supreme Court has "recognized that ERISA represents a 'careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans.'" *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (quoting *Aetna Health*, 542 U.S. at 215). "Congress sought 'to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.'" *Id.* (alterations in

original) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)). "ERISA 'induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred.'" *Id.* (alteration in original) (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002), *overruled in part on other grounds by Ky. Ass'n of Health Plans v. Miller*, 538 U.S. 329 (2003)).

Accordingly, 29 U.S.C. § 1132(a) "set[s] forth a comprehensive civil enforcement scheme." *Aetna Health*, 542 U.S. at 208 (2004) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987), *overruled in part on other grounds by Miller*, 538 U.S. 329).

### III

UBH argues that Plaintiffs lacked Article III standing to bring their claims because: (1) Plaintiffs did not suffer concrete injuries; and (2) Plaintiffs did not show proof of benefits denied, and so they cannot show any damages traceable to UBH's Guidelines. We disagree. We review de novo the district court's determination that Plaintiffs have Article III standing. *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1288 (9th Cir. 2014).

To establish standing under Article III, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992)). "If 'the plaintiff does not claim to have suffered an injury that the

defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *Id.* (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)).

To determine whether a statutory violation caused a concrete injury, we ask: "(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270–71 (9th Cir. 2019) (alteration in original) (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017)).

A

We find Plaintiffs sufficiently alleged a concrete injury as to their fiduciary duty claim. ERISA's core function is to "protect contractually defined benefits," *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985)), and UBH's alleged fiduciary violation presents a material risk of harm to Plaintiffs' interest in their contractual benefits, *see Ziegler v. Conn. Gen. Life Ins. Co*., 916 F.2d 548, 551 (9th Cir. 1990) ("Congress intended to make fiduciaries culpable for certain ERISA violations even in the absence of actual injury to a plan or participant."). Under the fiduciary duties section of ERISA, a fiduciary has a duty to administer plans "solely in the interest of the participants and beneficiaries . . . with . . . care, skill, prudence, and diligence," and "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a). Plaintiffs alleged that UBH administered their Plans in UBH's financial self-interest and

in conflict with Plan terms. This presents a material risk of harm to Plaintiffs' ERISA-defined right to have their contractual benefits interpreted and administered in their best interest and in accordance with their Plan terms. Their alleged harm further includes the risk that their claims will be administered under a set of Guidelines that impermissibly narrows the scope of their benefits and also includes the present harm of not knowing the scope of the coverage their Plans provide. The latter implicates Plaintiffs' ability to make informed decisions about the need to purchase alternative coverage and the ability to know whether they are paying for unnecessary coverage.

We also find Plaintiffs alleged a concrete injury as to the denial of benefits claim. As explained, ERISA protects contractually defined benefits, *see McCutchen*, 569 U.S. at 100. Plaintiffs alleged a harm—the arbitrary and capricious adjudication of benefits claims—that presents a material risk to their interest in fair adjudication of their entitlement to their contractual benefits. Plaintiffs need not have demonstrated that they were, or will be, entitled to benefits to allege a concrete injury. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 424–25 (2011); *cf. Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("When the government erects a barrier that makes it more difficult for" someone "to obtain a benefit" a plaintiff challenging "the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing").

B

We also find that Plaintiffs alleged a particularized injury as to both claims. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted), *as revised* (May 24, 2016). Plaintiffs' alleged injuries are particularized because the Guidelines are applied to the contractual benefits afforded to each individual class member. The fact that Plaintiffs did not ask the court to determine whether they were individually entitled to benefits does not change the fact that the Guidelines materially affected each Plaintiff. *Cf. Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020) (holding no injury where alleged ERISA violations had no effect on plaintiffs' *defined benefit plan*).

Finally, Plaintiffs' alleged injuries are "fairly traceable" to UBH's conduct. An injury is "fairly traceable" where there is a causal connection between the injury and the defendant's challenged conduct. *Lujan*, 504 U.S. at 560. Plaintiffs' alleged injuries are fairly traceable to UBH's conduct because their interest in the proper interpretation of their contractual benefits, inability to know the scope of coverage under their Plans, and denial of coverage requests, are all connected to UBH's alleged conduct of improperly developing Guidelines in its own self-interest and using those improper Guidelines in denying Plaintiffs' coverage requests.

IV

UBH also appeals from the district court's class certification order. The district court's class certification decision is reviewed for an abuse of discretion. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 984 (9th Cir. 2015). A district court abuses its discretion when its ruling is based "on an erroneous view of the law." *Id.* (citation omitted). We review de novo the district court's interpretation of ERISA. *See Shaver v. Operating Eng'rs Loc. 428 Pension Tr. Fund*, 332 F.3d 1198, 1201 (9th Cir.

2003). UBH argues that the district court erred in certifying the three classes based on Plaintiffs' "novel reprocessing theory" because Rule 23 of the Rules of Civil Procedure and the Rules Enabling Act, 28 U.S.C. § 2072(b), forbid using the class action procedure to expand or modify substantive rights. As to Plaintiffs' denial of benefits claim, we agree.[5]

"[T]he Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (quoting 28 U.S.C. § 2072(b)). We must therefore begin with the ERISA statute to determine Plaintiffs' substantive rights.

As discussed above, the purpose of ERISA is to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health*, 542 U.S. at 208. Accordingly, 29 U.S.C. § 1132(a) "set[s] forth a comprehensive civil enforcement scheme" for accomplishing the overall purposes of ERISA. *Id.* (quoting *Dedeaux*, 481 U.S. at 54). Two provisions are particularly relevant: § 1132(a)(1)(B) and § 1132(a)(3). Under § 1132(a)(1)(B), "[i]f a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits. A participant or beneficiary can also bring suit generically to 'enforce his rights' under the plan, or to

---

[5] UBH's Rule 23 argument in its Opening Brief disputed class certification only on the grounds that Plaintiffs facially challenged the Guidelines and have asserted a "novel reprocessing theory" to advance their denial of benefits claim on a class-wide basis. This argument does not implicate a Rules Enabling Act issue as to the fiduciary duty claim. Thus, we deem any challenge to certification of the breach of fiduciary duty claim forfeited, and our analysis leaves class certification as to that claim intact.

clarify any of his rights to future benefits." *Id.* at 210 (quoting 29 U.S.C. § 1132(a)(1)(B)).

Plaintiffs argue that under ERISA, beneficiaries have a right to a "full and fair review" under the correct standard, *Buffonge v. Prudential Ins. Co. Of Am.*, 426 F.3d 20, 30 (1st Cir. 2005), and that where an administrator applies the wrong standard, remand is the appropriate remedy to enforce the right to full and fair review under the plan. While remand may be an appropriate remedy in some cases where an administrator has applied an incorrect standard, we conclude that the district court erred in granting class certification here based on its determination that the class members were entitled to have their claims reprocessed regardless of the individual circumstances at issue in their claims.

We have ordered remand for claim reprocessing where a plaintiff has shown that his or her claim was denied based on the wrong standard *and* that he or she might be entitled to benefits under the proper standard. *See, e.g.*, *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 458, 460–61 (9th Cir. 1996); *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 949–51 (9th Cir. 1993). We have never held that a plaintiff is entitled to reprocessing without a showing that application of the wrong standard could have prejudiced the claimant. In fact, we have declined to remand for reevaluation where it would be a "useless formality" because the administrator's alleged error did not prejudice the claimant or it was clear that the claimant was ineligible for benefits. *See Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095–96 (9th Cir. 1985) (concluding a remand was an unnecessary and would be a "useless formality" where plaintiff was ineligible for benefits), *abrogated on other grounds by Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1527 (9th Cir.

1993); *see also Hancock v. Montgomery Ward Long Term Disability Tr.*, 787 F.2d 1302, 1308 (9th Cir. 1986) (declining to remand where plaintiff did not establish she was prejudiced by alleged procedural defect). Other circuits have similarly declined to remand for claim reevaluation or reprocessing where it would be futile. *See, e.g.*, *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 659–60 (6th Cir. 2013) (concluding that "even if [defendant] were found to have applied an incorrect definition of [the relevant plan term], a remand to [defendant] for reconsideration under the correct definition would be unavailing" where the defendant "would undoubtedly reach the same conclusion"); *Giordano v. Thomson*, 564 F.3d 163, 168 n.3 (2d Cir. 2009) (declining to reach claim that plaintiff was denied a "full and fair review" because "[r]emand would be futile").

Plaintiffs further argue that class certification was proper because the Guidelines "were 'riddled' with errors, [and] the District Court found that every Guidelines-based denial *necessarily* implicated one or more of the many defects the District Court found." Plaintiffs are correct that the district court reasoned that because the Guidelines were "significantly and pervasively more restrictive than" GASC in eight specific ways, "every adverse benefit determination made by UBH based in whole or in part on any of the Guidelines . . . was wrongful and made in violation of plan terms and ERISA." But this conclusion is not supported by the record.

Plaintiffs defined their proposed classes such that every class member's claim was denied, at least in part, based on UBH's application of the Guidelines. The district court found that the Level of Care Guidelines represented UBH's interpretation of GASC. It then made detailed findings illustrating that many provisions of the Level of Care

Guidelines were more restrictive than GASC. These factual findings are not challenged on appeal. But there are also many provisions of the Level of Care Guidelines that Plaintiffs did not challenge and that the district court did not find to be overly restrictive. Plaintiffs do not show that claimants who were denied coverage solely based on unchallenged provisions of these Guidelines were denied a full and fair review, yet those claimants are included in the certified classes.

The flaw in class certification is even more apparent with regard to the Coverage Determination Guidelines. The district court found that the Coverage Determination Guidelines incorporated the Level of Care Guidelines, but the incorporation of flawed Level of Care Guidelines does not demonstrate that class members whose claims were denied under the Coverage Determination Guidelines were necessarily denied a full and fair review. The Coverage Determination Guidelines included many unchallenged provisions, and some Coverage Determination Guidelines incorporated the Level of Care Guidelines only "as support in a specific paragraph or paragraphs." There is no indication that a claimant whose claim was denied under one of the many unchallenged provisions in the Coverage Determination Guidelines failed to receive a full and fair review of his or her claim. Nonetheless, such claimants were included in the classes.

Also fatal to Plaintiffs' argument is that the classes were defined as members whose claims were denied *in part* based on the Guidelines. And the district court determined such classes were ascertainable based on a UBH database that could identify denials that merely referenced the Guidelines. UBH pointed to at least some evidence that some class members' claims may have been denied for reasons wholly

independent of the Guidelines even though the Guidelines were referenced in their denial letters. For such class members, remand for reevaluation may be a "useless formality," *Ellenburg*, 763 F.2d at 1096, if UBH's alleged error in utilizing the Guidelines did not prejudice them.

In sum, on this record Plaintiffs have fallen short of demonstrating that all class members were denied a full and fair review of their claims or that such a common showing is possible. An individual plaintiff who demonstrated an error in the Guidelines would not be eligible for reprocessing without at least some showing that UBH employed an errant portion of the Guidelines that related to his or her claim. Because the classes were not limited to those claimants whose claims were denied based only on the challenged provisions of the Guidelines, Rule 23 was applied in a way that enlarged or modified Plaintiffs' substantive rights in violation of the Rules Enabling Act. *See Dukes*, 564 U.S. at 367.

The district court also abused its discretion by concluding that the reprocessing remedy could arise under § 1132(a)(3). Section 1132(a)(3) is a "catchall" provision that allows appropriate equitable relief for injuries that § 1132 does not otherwise remedy. *Varity*, 516 U.S. at 511–12, 515; *see also Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 959 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016). Where the alleged injury is improper denial of benefits, "a claimant may not bring a claim for denial of benefits under § 1132(a)(3) when a claim under § 1132(a)(1)(B) will afford adequate relief." *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1229 (9th Cir. 2020). Here, the type of relief that Plaintiffs seek is not available under § 1132(a)(3) where they declined to make the showing necessary to seek relief under § 1132(a)(1)(B).

Further, "[a]n individual bringing a claim under § 1132(a)(3) may seek 'appropriate equitable relief,' which refers to 'those categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were typically available in equity.'" *Castillo*, 970 F.3d at 1229 (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011)). Plaintiffs and the district court did not explain or refer to precedent showing how reprocessing constitutes relief that was typically available in equity for infirm Guidelines unrelated to Plaintiffs' claim for benefits. Consequently, the district court erred in concluding that reprocessing was an available remedy under 29 U.S.C. § 1132(a)(3).

The district court abused its discretion in certifying Plaintiffs' denial of benefits claims as class actions. Therefore, we reverse this part of the district court's class certification order.

V

Turning to the merits of Plaintiffs' claims, we begin by noting that the same errors present in the district court's denial of benefits class certification order also infected its merits and remedy determinations. Rather than determining whether UBH denied Plaintiffs' claims under a flawed provision of the Guidelines, the district court determined that remand was appropriate anytime UBH referenced any portion of the Guidelines in denying the claims.

UBH further argues that the district court erred by concluding that the Guidelines improperly deviated from GASC, and by failing to apply an appropriate level of deference to UBH's interpretation of the Plans. As an initial matter, UBH did not appeal the portions of the district court's judgment finding the Guidelines were impermissibly

inconsistent with state-mandated criteria. This portion of the district court's decision therefore remains intact.

As discussed above, ERISA does not "mandate what kind of benefits employers must provide." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003) (quoting *Lockheed*, 517 U.S. at 887). ERISA "focus[es] on the written terms of the plan" which "in short, [are] at the center of ERISA." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013). The question then is not whether ERISA mandates consistency with GASC—it does not—but whether UBH properly administered the Plans pursuant to the Plan terms. *See id.*

"Where the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, we ordinarily review the plan administrator's decisions for an abuse of discretion." *Schikore v. BankAmerica Suppl. Ret. Plan*, 269 F.3d 956, 960 (9th Cir. 2001); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The administrator's interpretation is an abuse of discretion if the interpretation is unreasonable. *Moyle*, 823 F.3d at 958. Where the administrator or fiduciary has a conflict of interest, review of its interpretation will be "informed by the nature, extent, and effect on the decision-making process" of such conflict. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006). "We review de novo a district court's choice and application of the standard of review to decisions by fiduciaries in ERISA cases." *Williby v. Aetna Life Ins. Co.*, 867 F.3d 1129, 1133 (9th Cir. 2017) (quoting *Estate of Barton v. ADT Sec. Servs. Pension Plan*, 820 F.3d 1060, 1065 (9th Cir. 2016)). We review findings of fact for clear error. *Abatie*, 458 F.3d at 962.

It is undisputed that the Plans in this case confer UBH with discretionary authority to interpret the Plan terms. The parties stipulated, and the district court found as a matter of fact, that this includes the discretion to create interpretive tools, such as the Guidelines. This finding was not clearly erroneous. Accordingly, UBH's interpretation of the Plans via its Guidelines is reviewed for an abuse of discretion. *Schikore*, 269 F.3d at 960. And the district court correctly identified this standard of review.

But the district court also found that UBH had a significant conflict of interest and therefore gave little weight to UBH's interpretation of the Plans. Where an administrator has a dual role as plan administrator and plan insurer, there is a structural conflict of interest. *See Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012). UBH served such a dual role as Plan administrator and insurer (authorized to determine the benefits owed and responsible for paying such benefits) for at least some of the Plans. The district court found, in addition to this structural conflict of interest, that UBH also had a financial conflict because it was incentivized to keep benefit expenses down. Again, the district court's factual findings are not clearly erroneous.

However, the district court's findings did not excuse it from applying the abuse of discretion standard. "Abuse of discretion review applies to a discretion-granting plan *even if* the administrator has a conflict of interest." *Abatie.*, 458 F.3d at 965 (emphasis added). The conflict is weighed as a factor in determining whether the administrator abused its discretion. *Stephan*, 697 F.3d at 929; *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115–17 (2008). The district court purported to apply an abuse of discretion standard tempered by high skepticism of UBH's interpretation given

UBH's conflict of interest.  UBH argues that even under a tempered abuse of discretion standard, the district court improperly substituted its own interpretation of the Plans' terms by construing them to require coverage for all care consistent with GASC.  Plaintiffs respond that the district court made no such mistake.  Instead, they argue, the district court understood the Guidelines were specifically developed and employed to implement *only* the Plans' requirement that all care must be consistent with GASC in order to be covered.

To the extent the district court concluded that the challenged portions of the Guidelines represented UBH's *implementation* of the GASC requirement, we find no clear error.  But to the extent the district court interpreted the Plans to require coverage for all care consistent with GASC, the court erred.  Even assuming the conflicts of interest found by the district court warrant heavy skepticism against UBH's interpretation, UBH's interpretation that the Plans do not require coverage for all care consistent with GASC does not conflict with the plain language of the Plans.  To the contrary, it gives effect to all the Plan provisions because the Plans exclude coverage for treatment *inconsistent* with GASC or otherwise condition treatment on consistency with GASC.**[6]**  In short, while the Plans mandated that a treatment be consistent with GASC, they did not compel UBH to cover *all* treatment that was consistent with GASC.

---

[6] UBH also argues that it did not abuse its discretion because substantial evidence supports the challenged portions of UBH's Guidelines.  We hold that it was not error for the district court to rule that UBH abused its discretion because the challenged portions of the Guidelines did not *accurately* reflect GASC.

The district court's statements on this issue are conflicting. In several places throughout its orders, the district court made clear its understanding that consistency with GASC was just one requirement for coverage, and that some plans excluded coverage for care that was consistent with GASC. But there are other places in the record where the district court stated the opposite. For instance, in its partial decertification order, the court described class members as those "covered by insurance plans that *require coverage consistent with generally accepted standards of care* but were denied coverage by UBH under [the] Guidelines." And the district court's final judgment directed that on remand, UBH must "re-evaluate only whether the proposed treatment at the requested level of care was consistent with generally accepted standards of care," even where the denial letter provided independent reasons for the denial of coverage. If the treatment was consistent with GASC, the court ordered UBH to pay the claims within 30 days.

We reverse the district court's judgment that UBH wrongfully denied benefits to the named Plaintiffs to the extent the district court concluded the Plans require coverage for all care consistent with GASC.[7]

---

[7] The district court's judgment on Plaintiffs' breach of fiduciary duty claim also relied heavily on its conclusion that the Guidelines impermissibly deviated from GASC. But this was not the only finding relevant to the district court's judgment on the breach of fiduciary duties claim. The district court also found, among other things, that financial incentives infected UBH's Guideline development process and that UBH developed the Guidelines with a view toward its own interests. Our decision does not disturb these findings to the extent they were not intertwined with an incorrect interpretation of the Plans.

VI

Finally, UBH contends that the district court erred when it excused unnamed class members from demonstrating compliance with the Plans' administrative exhaustion requirement. We remand for the district court to determine in the first instance the threshold issue of whether the exhaustion requirement applies to the fiduciary claim and, if so, whether that requirement was satisfied by the unnamed class members or should otherwise be excused in light of our decision.

Because we conclude that the district court erred in certifying Plaintiffs' denial of benefits claim, the only remaining class claim is for breach of fiduciary duty. Plaintiffs argue that exhaustion is not required for this statutory claim. We have held that exhaustion is not required for statutory breach of fiduciary duty claims. *See Spinedex*, 770 F.3d at 1294 (citing *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 n. 1 (9th Cir.1991), *overruled on other grounds as recognized by Pac. Shores Hosp. v. United Behav. Health*, 764 F.3d 1030, 1041 (9th Cir. 2014)); *see also Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1052 (9th Cir. 2020). But exhaustion *is* required if a plaintiff's statutory claim is a disguised claim for benefits. *See Spinedex*, 770 F.3d at 1294; *see also Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1484 (9th Cir. 1995). UBH argued below and argues on appeal that Plaintiffs' breach of fiduciary duty claim is such a "disguised benefit claim." The district court did not decide this issue, and instead assumed without deciding that the exhaustion requirement applies to Plaintiffs' breach of fiduciary duty claim. Based on that assumption, the district court held that the class members were excused from exhausting their claims because the named Plaintiffs exhausted their

remedies, which put UBH on notice of the class members' facial challenges to the Guidelines, "thus fulfilling the purposes of UBH's internal grievance procedure." The district court further held that "in any event, exhaustion is not required because it would have been futile."

We decline to reach the merits of whether the district court erred in holding that the class members were excused from exhausting their claims. Instead, we remand for the district court to determine the threshold question of whether Plaintiffs' breach of fiduciary duty claim is a "disguised claim for benefits," subject to the exhaustion requirement. *See Spinedex*, 770 F.3d at 1294. If the district court determines that the exhaustion requirement does apply, it must then determine if that requirement was satisfied or otherwise excused in light of our resolution of the issues presented in this appeal.

## VII

In sum, Plaintiffs have Article III standing to bring their breach of fiduciary duty and improper denial of benefits claims pursuant to 29 U.S.C. §§ 112(a)(1)(B) and (a)(3). And the district court did not err in certifying three classes to pursue the fiduciary duty claim. However, by certifying the denial of benefits classes without limiting the classes to those with claims that UBH denied under a specific Guidelines provision(s) challenged in this litigation that applied to the claimant's own request for benefits, the certification order improperly enlarged or modified Plaintiffs' substantive rights in violation of the Rules Enabling Act. Accordingly, we reverse the district court's certification of the denial of benefits classes.

On the merits, the district court erred to the extent it determined that the Plans require the Guidelines to be

coextensive with GASC. Therefore, the judgment on Plaintiffs' denial of benefits claim is reversed, and to the extent the judgment on Plaintiffs' breach of fiduciary duty claim is based on the district court's erroneous interpretation of the Plans, it is also reversed. And we remand for the district court to answer the threshold question of whether Plaintiffs' fiduciary duty claim is subject to the exhaustion requirement.

**AFFIRMED in part, REVERSED in part, and REMANDED FOR FURTHER PROCEEDINGS.** Each party to bear its own costs.